**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

EDWIN RICARDO FLORES,
*Defendant-Appellant.*

No. 16-50096

D.C. No.
3:15-cr-00268-MMA-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted July 13, 2017
Pasadena, California

Filed August 28, 2018

Before: Ferdinand F. Fernandez, Kim McLane Wardlaw,
and Mary H. Murguia,* Circuit Judges.

Opinion by Judge Wardlaw

---

* This case was submitted to a panel that included Judge Stephen R. Reinhardt. Following Judge Reinhardt's death, Judge M. Murguia was drawn by lot to replace him. Ninth Circuit General Order 3.2.h. Judge M. Murguia has read the briefs, reviewed the record, and listened to oral argument.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for attempting to reenter the United States after being deported in violation of 8 U.S.C. § 1326(a).

The panel held that receiving stolen property under California Penal Code § 496(a) is a categorical match for the generic federal crime of receipt of stolen property, and that it is therefore not unreasonable for the Board of Immigration Appeals to construe it as a felony "theft offense (including receipt of stolen property)," that is, as an aggravated felony as defined in the Immigration and Nationality Act. The panel concluded that the defendant's deportation based on a prior conviction for receipt of stolen property, along with a sentence of more than one year of imprisonment, was not fundamentally unfair and was a proper basis for the defendant's illegal reentry conviction.

The panel rejected the defendant's contention that he had plausible grounds for relief from his 2009 expedited removal in the form of withdrawal of his application for admission, and therefore concluded that even assuming the expedited removal proceedings violated his due process rights, he could not establish prejudice.

The panel held that the district court, which applied *Daubert* explicitly in the proceeding on the defendant's

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

motion *in limine* and during the bench trial, did not abdicate its gatekeeping function by admitting the testimony of a fingerprint expert.

**COUNSEL**

Ryan V. Fraser (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

D. Benjamin Holley (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

WARDLAW, Circuit Judge:

Edwin Flores, a native and citizen of Mexico, appeals his conviction for attempting to reenter the United States after being deported in violation of 8 U.S.C. § 1326(a). Flores moved to dismiss the indictment because the underlying basis of his deportation was a 2001 conviction of three counts of receiving stolen property under California Penal Code § 496(a), which the Immigration and Naturalization Service ("INS") deemed an aggravated felony theft offense under 8 U.S.C. § 1101(a)(43)(G). Section 1227(a)(2)(A)(iii) of that chapter renders deportable aliens convicted of aggravated felonies, which include "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

We therefore must decide whether a California conviction for receipt of stolen property is categorically an aggravated felony within the Immigration and Naturalization Act ("INA").  Although our court has previously ruled that California's receipt of stolen property statute "fits within the generic definition of theft," *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009), Flores challenges this conclusion because the federal generic definition of "theft" requires a lack of consent on the part of the property owner, and property may be "stolen" under California law with the owner's consent, *e.g.* by fraudulent means.  We nonetheless hold that California's receipt of stolen property offense is a categorical match for the generic federal crime of receipt of stolen property and that it is therefore not unreasonable for the Board of Immigration Appeals ("BIA") to construe it as a felony "theft offense (including receipt of stolen property)," that is, as an aggravated felony as defined in the INA.  For that and other reasons discussed below, we conclude that the district court properly denied Flores's motion to dismiss the indictment, and we affirm his conviction.

**I.**

Born in 1977 and brought to the United States by his grandmother when he was five, Flores attended school and eventually studied radio communications at Los Angeles Trade-Tech.  Flores worked at Ramirez Electronics from 1999 to 2009, except for the times he was in custody or outside of the United States.

Flores has an extensive criminal history.[1] Most relevant here is his 2001 conviction for three counts of receipt of stolen property, for which he was sentenced to two years in custody. In 2002, while incarcerated, Flores was charged by the INS as deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his convictions were for aggravated felonies as defined by 8 U.S.C. § 1101(a)(43)(G), that is, "a theft offense (including receipt of stolen property)." He was ordered removed on that basis; the order was executed on September 3, 2002.

Between 2002 and 2009, this administrative removal order was reinstated three times. However, in 2009, Flores was subject to expedited removal proceedings after he presented a counterfeit Resident Alien Card, I-551, to border officers at the San Ysidro Port of Entry. Flores signed sworn admissions that he had purchased the counterfeit I-551 in

---

[1] In 1997, Flores was convicted of receipt of stolen property and sentenced to 180 days in custody and thirty-six months of probation. Later that year, he was convicted of auto theft and sentenced to sixty days in custody and thirty-six months of probation. In 2000, Flores was charged with being a felon in possession of a firearm; he was convicted in 2001 and sentenced to six days in custody and thirty-six months of probation. Later in 2000, Flores was charged with one count of grand theft auto and eleven counts of receipt of stolen property. The ultimate conviction and sentence (two years in custody for three counts of receipt of stolen property) is the basis of the underlying deportation here. In 2005, Flores was convicted of felony burglary and sentenced to two years in prison. He was paroled to Immigration and Customs Enforcement in 2006, returned in May 2008, and paroled in December 2008. In 2007, Flores was charged with driving with a suspended license; he was convicted in 2008 and sentenced to ten days in custody and three years probation. In April 2008, he was convicted of receipt of stolen property, sentenced to sixteen months in custody, and paroled to ICE in December 2008.

Tijuana, presented it at the Port of Entry hoping to make it to Los Angeles, was previously deported, and failed to apply for permission to reenter the United States.  He was removed to Mexico.[2]

This appeal stems from Flores's January 6, 2015, re-entry and indictment for violating 8 U.S.C. § 1326.  He moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d) for lack of a valid predicate order of deportation.  Flores argued that the 2002 removal was invalid because receipt of known stolen property, California Penal Code § 496(a), is not an aggravated felony and that the 2009 expedited removal was invalid because his due process rights were violated.[3]  The district court denied the motion.

Flores subsequently moved *in limine* to exclude the government's fingerprint expert, David Beers, on *Daubert* grounds, which the district court denied.  Beers testified that Flores's fingerprint matched the fingerprint on his prior deportation orders.

---

[2] After Flores's expedited removal, he continued to return to the United States.  Flores was apprehended in the United States on February 10, 2009, January 26, 2011, and June 5, 2012.  In 2009 and 2012, Flores was convicted of violating 8 U.S.C. § 1326, illegal reentry of removed aliens, and sentenced to twenty-seven months and thirty-three months in custody, respectively.  Each time he was removed to Mexico.

[3] Flores claims that during the expedited removal proceedings, no one explained to him what was happening other than to indicate he would be deported to Mexico, he did not have an opportunity to read the documents, and he did not understand what he was signing.  The government does not contest these assertions.

The district court, after a bench trial, found Flores guilty of violating 8 U.S.C. § 1326(a) & (b) and imposed a sentence at the midrange of the guidelines, forty months, noting that Flores had previously served twenty-seven months and thirty-three months for two prior section 1326 convictions.[4] Flores timely appeals.

## II.

We have jurisdiction to review Flores's criminal conviction pursuant to 28 U.S.C. § 1291. "The Court of Appeals reviews *de novo* the denial of a motion to dismiss an 8 U.S.C. § 1326 indictment when the motion to dismiss is based on alleged due process defects in an underlying deportation proceeding." *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001). De novo review also applies when an appellant argues that the conviction underlying the challenged removal proceeding does not constitute an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(G). *See United States v. Gonzalez-Corn*, 807 F.3d 989, 993 (9th Cir. 2015). The district court's factual findings, however, are reviewed for clear error. *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1129 (9th Cir. 2013). "We review the admission of expert testimony at trial for an abuse of discretion." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc).

---

[4] The district court agreed with the PSR and the government that an eight-level enhancement was warranted because Flores's prior convictions for receipt of stolen property constituted aggravated felonies within the guidelines.

## III.

Flores collaterally attacks his underlying 2002 removal order as "fundamentally unfair," 8 U.S.C. § 1326(d)(3),[5] because the INS incorrectly determined that California's crime of receipt of stolen property is an aggravated felony. *See Gonzalez-Corn*, 807 F.3d at 993.  He also claims that due process violations prejudiced his 2009 expedited removal proceedings.  *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087–88 (9th Cir. 2011).

### A.  Receipt of Stolen Property

The question before us is whether Flores's convictions under California Penal Code section 496(a)[6] for receipt of stolen property are aggravated felonies under the INA.  We have previously applied the categorical analysis to hold that "there is a categorical match between the full range of

---

[5] The first two statutory requirements, administrative exhaustion and judicial review, 8 U.S.C. § 1326(d)(1), (2), are met because the expedited removal proceedings afforded Flores no opportunity for administrative or judicial review. *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014).

[6] "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. . . . A principal in the actual theft of the property may be convicted pursuant to this section.  However, no person may be convicted both pursuant to this section and of the theft of the same property."  Cal. Penal Code § 496(a).

conduct proscribed by section 496(a) of the California Penal Code and the generic definition of a theft offense." *Verdugo-Gonzalez*, 581 F.3d at 1061. But wait, says Flores, how can this be when this court has also repeatedly held that California's theft statute, California Penal Code section 484(a),[7] is not a categorical match with the generic "theft offense" in 8 U.S.C. § 1101(a)(43)(G) because the generic federal theft offense encompasses only takings *without consent* and, in contrast, California's theft statute expressly criminalizes takings with consent—"such as theft of labor, false credit reporting, and theft by false pretenses." *Lopez-Valencia v. Lynch*, 798 F.3d 863, 868 (9th Cir. 2015);[8] *see Bell v. Feibush*, 151 Cal. Rptr. 3d 546, 551 (Ct. App. 2013).

---

[7] "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft." Cal. Penal Code § 484(a).

[8] *See also Garcia v. Lynch*, 786 F.3d 789, 794–95 (9th Cir. 2015); *United States v. Rivera*, 658 F.3d 1073, 1077 (9th Cir. 2011); *Carrillo-Jaime v. Holder*, 572 F.3d 747, 751–53 (9th Cir. 2009). To the extent our 2009 opinion in *Verdugo-Gonzalez*, 581 F.3d at 1061, holds otherwise, it does so because it based its holding on a misreading of California law: that it encompasses only theft without consent, when in fact it encompasses theft with consent.

1.  The Meaning of the Word "Including"

Flores's argument rests on the express language of 8 U.S.C. § 1101(a)(43)(G), which defines aggravated felonies to include "a theft offense (including receipt of stolen property)." He contends that if "theft" includes receipt of stolen property, and California's definition of theft is not a categorical match for generic theft, receipt of stolen property must also be deemed overbroad. This argument, however, fails to address the inherent ambiguity in the word "including."

Flores is right that, on the one hand, "including" could mean a subset: the generic federal offense of "receipt of stolen property" must satisfy the elements of a generic federal "theft offense," that is, the property must have been stolen through a generic theft offense, meaning without the owner's consent. California Penal Code section 496(a), however, lacks such a requirement. Instead, it criminalizes receipt of property taken from its owner through any theft, with or without consent.[9] Therefore, if we conclude that "including" has only the one meaning of "subset," receiving known stolen property under California law would not be a categorical match with the generic federal offense of "receipt of stolen property."

---

[9] California Penal Code section 496(a) uses the term "theft" without including a definition, thereby incorporating California's general theft definition set forth in California Penal Code section 484(a). *See, e.g.*, *Carrillo-Jaime v. Holder*, 572 F.3d 747, 751 (9th Cir. 2009). And furthermore, California Penal Code section 490a mandates that "stolen" within section 496(a) be read and interpreted as if it said "theft."

On the other hand, however, the word "including" could have been used by Congress to add a theft-related crime, receipt of stolen property, into the list of qualifying offenses even though it may not otherwise technically be a generic "theft offense." *See Torres v. Lynch*, 136 S. Ct. 1619, 1628 (2016) (describing 8 U.S.C. § 1101(a)(43)(G) as incorporating "any state or foreign conviction for . . . nonviolent activity [such] as receiving stolen property" without mentioning "theft offense"); *see generally United States v. Yochum (In re Yochum)*, 89 F.3d 661, 668 (9th Cir. 1996) ("'[I]nclude' is frequently, if not generally used as a word of extension or enlargement rather than as one of limitation or enumeration.") (quoting *Am. Sur. Co. v. Marotta*, 287 U.S. 513, 517 (1933)).

Reading "including" in this way is consistent with the distinct function of the term "stolen" in "receipt of stolen property": unlike the adjective "theft" in "theft offense," which indicates the nature of the offender's conduct, "stolen" describes the nature of the property involved in the offense, independent of the offender's conduct. One consequence of this difference is that the elements of generic theft, "[1] the taking of property or an exercise of control over property [2] without consent [3] with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent," *Verdugo-Gonzalez*, 581 F.3d at 1061, are distinct from the elements of receipt of stolen property, [1] possession [2] of stolen property [3] knowing it was stolen, *Lopez-Valencia*, 798 F.3d at 868. *See also* Receiving Stolen Property, Model Penal Code § 223.6. Another consequence is that, in many jurisdictions, including California, theft is not a lesser

included offense of receiving stolen property.[10]  *See, e.g.*, *People v. Ceja*, 229 P.3d 995, 998 (Cal. 2010); *Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky. 2002); *Williams v. State*, 496 N.E.2d 1282, 1284 (Ind. 1986); *City of Maumee v. Geiger*, 344 N.E.2d 133, 136 (Ohio 1976) (per curiam); *State v. Kelly*, 365 S.W.2d 602, 606 (Mo. 1963); *Bargesser v. State*, 116 So. 12, 13 (Fla. 1928).  And the difference between the generic theft definition, which requires lack of consent, and that of California law, which does not, is irrelevant to a conviction for receipt of stolen property.  The offender must know (or believe) the property was "stolen"; he does not need to know how it was stolen to be convicted.  *See, e.g.*, *People v. Moss*, 127 Cal. Rptr. 454, 456 (Ct. App. 1976) ("[I]t is not necessary for the People to allege or prove that the defendant had had any prior connection with the thief, or that the goods received had been stolen."); *Wertheimer v. State*, 169 N.E. 40, 43 (Ind. 1929) ("[I]t is not necessary to prove that the accused knew from whom the property was stolen, or when or where it was stolen, or who stole it, or the circumstances under which it was stolen."); *State v. Van Treese*, 200 N.W. 570, 571 (Iowa 1924) ("It was not necessary for the state to prove that the defendant had personal knowledge of the larceny in the sense that he was present as a witness thereof."); *State v. Lewark*, 186 P. 1002, 1003 (Kan. 1920) ("It was not necessary to a rightful conviction that the defendant should have been advised of the past history of the car—from whom and when and where the larceny had taken place, or that he should have had absolute knowledge of the theft." (citation omitted)); *Yeargain v. State*, 45 P.2d 1113,

---

[10] One cannot be convicted for both theft and receipt of the same stolen property because a thief cannot receive property from himself, not because of the prohibition on double punishment.  *See, e.g.*, *People v. Ceja*, 229 P.3d 995, 998–99 (Cal. 2010).

1115 (Okla. Crim. App. 1935) ("It is not necessary to prove that the accused knew from whom the property was stolen, or who stole it, or the circumstances under which it was stolen.").

Because we conclude that the term "including" in the INA is ambiguous, we must turn to the familiar *Chevron* framework, where, as here, the Board of Immigration Appeals' ("BIA" or "Board") has previously interpreted the term "including" within 8 U.S.C. § 1101(a)(43)(G). *See, e.g.*, *Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1160 (9th Cir. 2011). Under *Chevron*, we must defer to the precedential opinions of the BIA interpreting the term so long as the interpretation is based on a permissible construction of the statute. *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 815 (9th Cir. 2016).

In *Matter of Alday-Dominguez*, 27 I. & N. Dec. 48 (B.I.A. 2017), the BIA definitively interpreted the term "including" within the meaning of section 1101(a)(43)(G), squarely holding that "the receipt of stolen property provision in [section 1101(a)(43)(G)] does not require that [the] unlawfully received property be obtained by means of theft."[11] *Id.* at 49. The BIA reasoned that, rather than saying "receipt of property obtained by theft," the statute simply reads "receipt of stolen property," thus not limiting it to the generic federal definition of theft. *Id.* at 50. Furthermore, section 1101(a)(43)(G) is not the only entry within 1101(a)(43)'s list of aggravated felonies that uses the word "including" "to cover a broader range of offenses than those

---

[11] In *Verdugo-Gonzalez* we did not directly address the question of whether the crime of receipt of stolen property required that the property be obtained by means of theft. *See Verdugo-Gonzalez*, 581 F.3d at 1061.

previously referenced." *Id.* at 51 n.7 (discussing section 1101(a)(43)(B)). The Board also noted that the Supreme Court has held in a different context that the term "stolen" "should . . . be interpreted broadly as including offenses of embezzlement, false pretenses, and any other felonious takings." *Id.* at 50–51 (citing *United States v. Turley*, 352 U.S. 407, 415–15 (1957)).

The BIA also relied heavily on its 2009 decision in *Matter of Cardiel-Guerrero*, 25 I. & N. Dec. 12 (B.I.A. 2009), where the Board concluded that "'receipt of stolen property' is not merely a subset of 'theft' as that term is used in [section 1101(a)(43)(G)]." *Id.* at 14. The Board in *Cardiel* reasoned that (1) in a significant number of jurisdictions, an offender cannot be convicted of both theft and receipt of the same stolen property; (2) many states do not include an element of theft in their receipt of stolen property statutes; and (3) if receipt of stolen property within section 1101(a)(43)(G) is merely a subset of the generic theft offense, then the phrase "receipt of stolen property" in that section would be mere surplusage. *Id.* Other precedential BIA opinions have also treated "receipt of stolen property" as a separate, independent aggravated felony. *Cf. In Re Bahta*, 22 I. & N. Dec. 1381, 1391 (B.I.A. 2000) ("We conclude that the reference to 'receipt of stolen property' in [section 1101(a)(43)(G)] of the Act was intended in a generic sense to include the category of offenses involving knowing receipt, possession, or retention of property from its rightful owner."). And, as the Board later observed in *Matter of Deang*, 27 I. & N. Dec. 57 (B.I.A. 2017):

> [A] necessary element of a receipt of stolen property offense is an intent to deprive the owner of his or her property. We observe that

this shared element is likely responsible for Congress' decision to group within [section 1101(a)(43)(G)] the aggravated felonies of theft and receipt of stolen property, which otherwise contain several nonmatching features and constitute distinct and separate offenses.

*Id.* at 59.

We defer to the BIA's permissible, reasonable construction of the term "including." Therefore, "receipt of stolen property" is a distinct aggravated felony independent of theft and the property received need not have been stolen by means of "theft" as generically defined.

2. Generic Receipt of Stolen Property

"To determine the elements of a federal generic crime, we must first consider whether Congress provided any specific guidance." *Trung Thanh Hoang*, 641 F.3d at 1160 (citation omitted). While there are various federal criminal provisions relating to theft and stolen property, which are principally included in Chapter 31 ("Embezzlement and Theft") and Chapter 113 ("Stolen Property") of Title 18 of the United States Code, they enumerate specific instances of receipt of stolen property but none "clearly set[s] forth the elements" of a generic federal crime. *See id.* Nor does section 1101(a)(43)(G) or the remainder of the INA provide a generic definition of receipt of stolen property. *See id.* Therefore, we must determine whether the BIA, which is charged with implementing the INA, has interpreted the term and, if so, we must defer to the BIA's interpretation of generic receipt of

stolen property within the INA, if it is reasonable.[12]  *Id.*; *see also Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086 (9th Cir. 2008).

BIA decisions define "receipt of stolen property" as having the following elements: (1) receipt, possession, concealment, or retention of property, (2) knowledge or belief that the property has been stolen, and (3) intent to deprive the owner of his property. *Matter of Deang*, 27 I. & N. Dec. 57, 59–63 (B.I.A. 2017); *Matter of Cardiel-Guerrero*, 25 I. & N. Dec. 12, 16 (B.I.A. 2009); *In Re Bahta*, 22 I. & N. Dec. at 1384–91. A mens rea equivalent to the presence of a reason to believe that the property had been stolen is insufficient. *Matter of Deang*, 27 I. & N. Dec. at 59–63; *Matter of Cardiel-Guerrero*, 25 I. & N. Dec. at 24–25. Intent to deprive can be inferred from knowledge that the property was stolen. *See Matter of Sierra*, 26 I. & N. Dec. 288, 291 (B.I.A. 2014) (relying on *Randhawa v. Ashcroft*, 298 F.3d 1148, 1154 (9th Cir. 2002)). The generic offense also includes aiding the receipt of stolen property as a second-degree principal.[13]

---

[12] Deference is appropriate here because the BIA's reasoning in the precedential opinions discussed below properly adheres to the INA's text and draws on state criminal codes to glean the "the generic sense in which" receipt of stolen property is "used in the criminal codes of most States." *Taylor v. United States*, 495 U.S. 575, 598 (1990); *cf. Martinez-Cedillo v. Sessions*, 896 F.3d 979, 1005–06 (9th Cir. 2018) (Wardlaw, J., dissenting). Furthermore, the BIA's decision is stable and specific. *Cf. Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 813–15, 819–22 (9th Cir. 2016) (refusing to defer to the BIA's definition of "relating to obstruction of justice" which had repeatedly changed and used an amorphous phrase).

[13] The generic federal offenses in section 1101(a)(43) do not include after the fact accessories. *See United States v. Vidal*, 504 F.3d 1072, 1077–80 (9th Cir. 2007) (en banc); *United States v. Arriaga-Pinon*, 852 F.3d 1195, 1199 (9th Cir. 2017). That is not relevant to "receipt of

*Matter of Cardiel-Guerrero*, 25 I. & N. Dec. at 17; *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189–90 (2007) (holding that the generic "theft offense" in section 1101(a)(43)(G) includes second-degree principals and accessories before the fact).

In *Matter of Alday-Dominguez*, the BIA concluded that the receipt of stolen property "is not limited to receipt offenses in which the property was obtained by means of theft." *Matter of Alday-Dominguez*, 27 I. & N. Dec. at 51; *see also id.* at 51 n.6 (describing survey of state law indicating that "most jurisdictions broadly define 'stolen' beyond the common law offenses of theft and larceny to include property obtained by unlawful means such as robbery, extortion, coercion, burglary, false pretenses, deceit, embezzlement, and other illegal conduct."). The BIA reasoned from the Supreme Court's decision in *Turley*, in which the Court broadly interpreted the term "stolen" in the National Motor Vehicle Theft Act, 18 U.S.C. § 2312 (criminalizing transport of stolen motor vehicles and aircraft) to mean any felonious taking, including false pretenses. *Turley*, 352 U.S. at 416–17 ("[A]n automobile is no less 'stolen' because it is rented . . . and sold without the permission of the owner (embezzlement). The same is true where an automobile is purchased with a worthless check . . . and sold (false pretenses). Professional thieves resort to innumerable forms of theft.").

---

stolen property," however, because it is a continuing crime encompassing possession, concealment, and retention. *See also Verdugo-Gonzalez*, 581 F.3d at 1061–62 (holding that section 496(a) does not extend to accessories after the fact).

The BIA's reasonable interpretation of the elements of generic receipt of stolen property is a categorical match to the elements of that crime in California Penal Code section 496(a). To secure a conviction under section 496(a), the government must prove these elements: (1) stolen property; (2) knowledge that the property was stolen; and (3) possession, purchase, receipt, concealment, sale, or withholding of the stolen property. Cal. Penal Code § 496(a); *People v. King*, 96 Cal. Rptr. 2d 817, 819–20 (Ct. App. 2000); *People v. Stuart*, 77 Cal. Rptr. 531, 533 (Ct. App. 1969); *see Castillo-Cruz v. Holder*, 581 F.3d 1154, 1161 (9th Cir. 2009). The statute extends to those who aid in the action but it "does not cover someone whose role was limited to that of an accessory after the fact." *Alvarez-Reynaga v. Holder*, 596 F.3d 534, 537 (9th Cir. 2010). The mens rea element requires actual knowledge of or belief that the property is stolen. *People v. Tessman*, 168 Cal. Rptr. 3d 29, 35 (Ct. App. 2014). Pursuant to California Penal Code sections 484(a) and 490a, "stolen" includes taking, carrying, leading, driving away, fraudulently appropriating, defrauding, and false pretenses. *See Bell*, 151 Cal. Rptr. 3d at 551.

California's "stolen property" element does not preclude a categorical match. California courts have squarely held that it is unnecessary for the property to have been actually stolen, but rather that the perpetrator believes it to be stolen, matching the generic federal offense's "actual knowledge or belief" requirement. *See, e.g.*, *People v. Moss*, 127 Cal. Rptr. 454, 455–56 (Ct. App. 1976).

Nor does the generic federal offense's "intent to deprive" element, which is not an independent element of the California offense, preclude a categorical match. We have previously held that the act of buying or receiving stolen

property, knowing it was stolen inherently "entails . . . the intent to deprive the owner of rights and benefits of ownership." *Verdugo-Gonzalez*, 581 F.3d at 1061; *see Castillo-Cruz*, 581 F.3d at 1161 (acknowledging an intent for at least temporary deprivation in section 496(a)); *Matter of Cardiel-Guerrero*, 25 I. & N. Dec. at 24–25 (examining California law and concluding that even though section 496(a) lacks an explicit intent requirement, California requires a general criminal intent to at least temporarily deprive the owner of their property).

Flores was properly deported in 2002: conviction for receipt of stolen property, along with a sentence of more than one year of imprisonment,[14] is categorically an aggravated

---

[14] As we have previously recognized, California Penal Code section 496(a) is a "wobbler," an offense punishable as either a misdemeanor or a felony. *United States v. Hernandez-Mejia*, 292 F. App'x 681, 682 (9th Cir. 2008); *see Ewing v. California*, 538 U.S. 11, 16 (2003) (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J.). "Under California law, a 'wobbler' is presumptively a felony and 'remains a felony except when the discretion is actually exercised' to make the crime a misdemeanor." *Ewing*, 538 U.S. at 16–17 (quoting *People v. Williams*, 163 P.2d 692, 696 (Cal. 1945)). The fact that receipt of stolen property under California law can result in a sentence below section 1101(a)(43)(G)'s one year threshold does not negate our conclusion that section 496(a) is a categorical match for "receipt of stolen property" in section 1101(a)(43)(G). *Renteria-Morales*, 551 F.3d at 1083 ("[A] sentence authorized by or subsequently imposed for a criminal offense is not an element of [a section 1101(a)(43)] offense.")

There is no evidence such discretion was exercised here and, in fact, Flores was sentenced to a two-year term of imprisonment, satisfying 8 U.S.C. § 1101(a)(43)(G)'s one year requirement. *See Alberto-Gonzalez v. INS*, 215 F.3d 906, 909–10 (9th Cir. 2000) (holding that "for which the term of imprisonment [is] at least one year" refers to actual sentence).

felony.[15]  As that deportation was not fundamentally unfair, 8 U.S.C. § 1326(d)(3), it was a proper basis for Flores's illegal reentry conviction under 8 U.S.C. § 1326(a).[16]

## B.  Due Process

Flores also contends that his 2009 expedited removal proceeding violated his due process rights.  Expedited removal proceedings must comport with the due process rights to notice and an opportunity to respond.  *See Raya-Vaca*, 771 F.3d at 1203–05.  However, here, we need not determine whether Flores's due process rights were violated and to what extent, if any, the typographical page numbering on the removal paperwork supports such a finding.  *Cf. id.* at 1205 (page number discrepancy supported existence of due process violation).  Even assuming a due process violation, Flores must "establish that he suffered prejudice as a result of the entry of the order."  *Id.* at 1206.  To demonstrate prejudice, Flores must show that he had "plausible grounds for relief" from the removal order, that is, more than a theoretical possibility of relief.  *Id.* at 1205–07.

Flores contends that he had plausible grounds for relief from removal in the form of withdrawal of his application for admission.  *See* 8 U.S.C § 1225(a)(4).  If he had been granted leave to withdraw his admission application, he would have been allowed to leave the United States voluntarily, escaping

---

[15] For this reason, we need not reach questions of divisibility or resort to the modified categorical approach.

[16] Because Flores's conviction was for an aggravated felony, to the extent he challenges the eight-level increase in his offense level under U.S.S.G. § 2L1.2(b)(1)(C), his argument is unavailing.

the harsh consequences that result from a removal order. 8 C.F.R. § 1235.4. To determine whether an alien could have received relief from removal by withdrawing his application, we look first to the factors that the agency must consider in exercising its discretion to grant relief, and second, in light of those factors, and based on the unique circumstances of Flores's case, we determine whether it was plausible that Flores would have been granted relief. *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).

To evaluate the factors relevant to the immigration officer's decision, our cases have turned to the Inspector's Field Manual for guidance, as it provides direction to field officers who must determine whether to grant relief. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 & n.16 (9th Cir. 2011); *see also Raya-Vaca*, 771 F.3d at 1206–07. While the Inspector's Field Manual instructs officers to consider all relevant facts and circumstances "to determine whether permitting withdrawal would be in the best interest of justice," *Raya-Vaca*, 771 F.3d at 1207 (quoting Inspector's Field Manual § 17.2(a) (2007), *available at* 2007 WL 7710869), it also enumerates six specific considerations: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations," *Barajas-Alvarado*, 655 F.3d at 1090 (citing Inspector's Field Manual § 17.2(a)). Application of these nonexhaustive factors involves a highly individualized determination. *Raya-Vaca*, 771 F.3d at 1207. However, the manual also instructs that withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant," such as the use of

counterfeit documents. *Id.* (quoting Inspector's Field Manual § 17.2(a)).

Flores concedes the obvious: the first five enumerated factors weigh heavily against an exercise of discretion to grant him the relief of withdrawal. He presented a counterfeit I-551 at the San Ysidro port of entry. That, combined with the fact that Flores's 2009 entry was at least his fourth unlawful entry in seven years, makes his immigration violation particularly serious. *See Raya-Vaca*, 771 F.3d at 1208 & n.12; *Barajas-Alvarado*, 655 F.3d at 1090. Flores's prior unlawful entries and use of counterfeit documents demonstrate his intent to violate the law. *Raya-Vaca*, 771 F.3d at 1208; *Barajas-Alvarado*, 655 F.3d at 1090. Even though Flores was married to a United States citizen, his immigration violations, combined with his extensive criminal history, which includes numerous felony convictions, are a virtually insurmountable block to any basis for admissibility.[17] *Raya-Vaca*, 771 F.3d at 1208 & n.13; *Barajas-Alvarado*, 655 F.3d at 1090. And in 2009, Flores was 31 years old and there is no indication that he was in poor health. *Raya-Vaca*, 771 F.3d at 1208 (same for thirty-three year old in apparent good health); *Barajas-Alvarado*, 655 F.3d at 1090 (holding that factor weighed against relief for thirty-five year old with no evidence of poor health).

As to the sixth factor, humanitarian or public interest concerns, Flores places great emphasis on the humanitarian component of this factor, highlighting the fact of his residence in the Los Angeles area since age five (that is,

---

[17] Indeed, Flores's 2001 convictions for receipt of stolen property render him deportable as an aggravated felon, as we have described earlier.

while he was in the US and not incarcerated), that he speaks English fluently, had obtained vocational training, and has supported his wife, three young children, his sister, and his mother, while being a primary caregiver for his middle daughter who suffers from autism. The government counters with public interest concerns, arguing that Flores's "egregious" criminal record going back twelve years and including multiple theft and burglary offenses and a firearms conviction outweighs Flores's assorted humanitarian considerations.

Consideration of the unique humanitarian and public interest concerns related to Flores's circumstances leads us to conclude that this factor also weighs against the plausibility of an immigration officer's grant of withdrawal. Flores's circumstances mirror those in *Barajas-Alvarado*, in which we determined relief was implausible, much more closely than those in *Raya-Vaca*, in which we found the plausibility of relief. In *Raya-Vaca*, the "other humanitarian or public interest concerns" weighed significantly in Raya's favor because his partner, their children, and his mother, siblings, and much of his extended family lived in the United States and his criminal history was "fairly minimal," comprising three misdemeanors resulting in thirteen days in jail. *Raya-Vaca*, 771 F.3d at 1198–99, 1208–09. By contrast, despite Barajas's Los Angeles family (parents, ten siblings, two children, and partner), we stated that he had "no humanitarian or public interest considerations weighing in his favor." *Barajas-Alvarado*, 655 F.3d at 1080, 1090; *see* Brief of Appellant, *United States v. Barajas-Alvarado*, No. 10-50134, 2010 WL 6762749 at *4 (9th Cir. Sept. 13, 2010). Moreover, Barajas's criminal history was significantly less serious than Flores's. He had only two prior convictions, one over twenty years earlier for transportation and sale of marijuana resulting

in sixty days in jail and the other seven years earlier for being a deported alien found in the United States, resulting in twenty-one months imprisonment. *Barajas-Alvarado*, 655 F.3d at 1080 n.3. And, unlike Raya, but like Barajas, Flores committed immigration fraud. *Compare id.* at 1080 *with Raya-Vaca*, 771 F.3d at 1210.

Flores relies on two comparator cases and statistics to support his argument that leave to withdraw his admission application plausibly would have been granted, despite his use of fraudulent documents, *i.e.*, the counterfeit identification he attempted to use for admission. But in the first comparator case, the petitioner, Jose Carlos Garcia-Gonzalez, did not have a criminal history nearly as serious as Flores[18] and had been deported only once before. The second, that of Omar Argueta-Rosales, omits details of his criminal history and indicates only at least two prior deportations. Both these cases involved fraud, a circumstance where relief is ordinarily not available. But otherwise, those cases do not present circumstances analogous to Flores's situation, given Flores's significantly more serious criminal history and his more numerous, repeated deportations. As for the statistics, the evidence Flores presents demonstrates that in 2013, 9,387 individuals with fraudulent documents were subject to expedited removal. Only *three* were allowed to withdraw their admission application in lieu of expedited

---

[18] Garcia was convicted of vehicle theft in May 2005 and then of being a felon in possession of a firearm in July 2005. For the first offense he received a 180 day suspended sentence and the second resulted in sixteen months in prison. He withdrew his application in 2009.

removal.[19]  Even were we to extrapolate from 2013 to 2009, the vanishingly small number of individuals comparable to Flores who were allowed to withdraw in lieu of expedited removal demonstrates the implausibility of him receiving that relief.

## C.  Admission of the Fingerprint Expert's Testimony

Conviction under 8 U.S.C. § 1326 requires the government to prove that a defendant had previously been deported. *United States v. Castillo-Basa*, 483 F.3d 890, 898 (9th Cir. 2007).  The government must demonstrate "(1) that a deportation proceeding occurred as to the defendant and as a result, (2) a warrant of deportation was issued and (3) executed by the removal of the defendant from the United States." *Id.*  To meet this burden here, the government relied on the testimony of David Beers, a fingerprint expert, who identified Flores by his fingerprints as the subject of an Alien file ("A-file") whose documents were offered to prove a 2014 deportation and removal.

Flores moved *in limine* under Federal Rule of Evidence 702 and *Daubert*[20] to preclude Beers from testifying.  He

---

[19] Flores claims that the relevant percentage is 13.4%.  But his calculation compares the total number of individuals subject to expedited removal to the total number who were allowed to withdraw, rather than the more pertinent comparison, the subset of aliens presenting fraudulent documents compared to those who were allowed to withdraw in lieu of expedited removal.

[20] Expert opinion testimony must be the product of "reliable principles and methods . . . reliably applied . . . to the facts of the case." Fed. R. Evid. 702.  The expert must have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*,

contended that "the government could not show Beers was adhering to contemporary professional practices in his field, or that his work was reliable, tested, or subject to peer review." Flores presented evidence that Beers failed to consult with other professionals, had taken no certification test in forty years, had no verification of his work done in this case, and had no regular continuing education in the field. The government responded that Beers had over 25 years' experience in fingerprint comparison, had worked as a Federal Bureau of Investigation fingerprint technician, and had been qualified as an expert in federal and state court more than thirty times. The district court denied Flores's motion based on its familiarity with Beers's expertise, testimony, background, and methodology.

At trial, Beers testified over Flores's renewed objections, and Flores was allowed extensive cross-examination as to his reliability as an expert. In his findings of Flores's guilt, the district court found Beers qualified and credible.

We disagree with Flores's argument that by admitting Beers's testimony the district court abdicated its gatekeeping function and thereby abused its discretion.[21] *See Estate of*

---

526 U.S. 137, 149 (1999) (citation omitted and alterations incorporated). "[E]videntiary reliability [is] based upon scientific validity." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993).

[21] Flores's additional argument that the district court erred by refusing to consider evidentiary materials submitted the night before the trial is unavailing. Flores had adequate notice that the court would accept such material only up until one day before trial, yet he submitted the material late. And even if this were error it was harmless: the documents Flores wanted to submit were incorporated into his cross-examination of Beers, which was the purpose of submitting the evidence in the first place.

*Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc). Flores waived his right to a jury trial and was convicted after a bench trial. "*Daubert* is meant to protect *juries* from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (quotations omitted) (emphasis in original); *see also FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial." (quotation omitted)); *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005) (*Daubert* "barriers are even more relaxed in a bench trial situation."); *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."). In bench trials, the district court is able to "make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006).

This is exactly what the district court properly did here, making an explicit finding regarding the scientific validity of Beers's testimony. *See Barabin*, 740 F.3d at 464 (requiring courts to make findings regarding the scientific validity or methodology of an expert opinion before admitting it). The district court identified and applied *Daubert* explicitly in the proceeding on Flores's motion *in limine*, and every time

Flores objected the district court mentioned or at least alluded to the relevant factors, and even reiterated its finding as to Beers's qualifications in its verdict.

Moreover, fingerprinting is far from junk science—it can be tested and peer reviewed and is generally accepted by the relevant scientific community. *See United States v. Calderon-Segura*, 512 F.3d 1104, 1109 (9th Cir. 2008) ("[F]ingerprint identification methods have been tested in the adversarial system for roughly a hundred years."). The combination of such a well-established practice and the bench trial render the district court's statements sufficient under *Barabin*.[22] *See Lopez v. Brewer*, 680 F.3d 1068, 1072–73 (9th Cir. 2012) (engaging with the relevant factors, even briefly, is sufficient).

## IV.

For the reasons set forth above, we **AFFIRM** Flores's conviction.

---

[22] We refuse to hold, as Flores urges, that a district court abuses its discretion in a bench trial when it admits expert testimony based on methodologies that differ from the standards that the federal government or fingerprinting trade organizations desire. Doing so would hamstring the discretion and flexible inquiry that are at the core of Rule 702.