Santana v. Barr

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2019

(Submitted: April 17, 2020          Decided: September 18, 2020)

Docket No. 18-2755-ag

———————————————————

ANDRES LUIS SANTANA,

*Petitioner*,

v.

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

———————————————————

Before:

LIVINGSTON, *Chief Judge*, LOHIER, and NARDINI, *Circuit Judges*.

This appeal involves a petition for review of a decision by the Board of Immigration Appeals ("BIA") affirming an order of removal of Andres Luis Santana to the Dominican Republic. The BIA determined that Santana's conviction for third-degree criminal possession of stolen property in violation of New York Penal Law § 165.50 is an aggravated felony offense under 8 U.S.C. § 1101(a)(43)(G), even though the stolen property need not have been stolen by means of "theft," as generically defined in the Immigration and Naturalization Act, and even though the state statute of conviction does not explicitly require an intent to deprive the owner of the property. We defer to the BIA's construction of the phrase "including receipt of stolen property" in § 1101(a)(43)(G) to refer to an offense distinct from a theft offense, and we **DENY** the petition for review.

Nicholas J. Phillips, Prisoners' Legal Services of New York, Buffalo, NY; Timothy Sun, Richard W. Mark, Luke A. Dougherty, Gibson, Dunn & Crutcher LLP, New York, NY, *for Petitioner* Andres Luis Santana.

Colin J. Tucker, Melissa K. Lott, Trial Attorneys, Song Park, Acting Assistant Director, Office of Immigration Litigation, *for* Jeffrey B. Clark, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent* William P. Barr, United States Attorney General.

LOHIER, *Circuit Judge*:

Andres Luis Santana petitions for review of a decision of the Board of Immigration Appeals ("BIA") ordering him removed from the United States for having been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(G), which codifies a provision of the Immigration and Naturalization Act ("INA"). The question on appeal is whether the BIA erred in concluding that Santana's conviction for criminal possession of stolen property in the third degree, in violation of New York Penal Law § 165.50, was an aggravated felony rendering him removable under 8 U.S.C. § 1101(a)(43)(G). The BIA concluded that a conviction under Penal Law § 165.50 is a removable aggravated felony even though the stolen property at issue may be obtained with the rightful owner's consent, and § 165.50 does not explicitly contain an intent to deprive element.

2

For the following reasons, we **DENY** the petition for review.

**BACKGROUND**

Santana was born in the Dominican Republic and admitted to the United States as a lawful permanent resident in 1988. Over the last decade he has had a string of criminal convictions. In January 2010 he pleaded guilty to petit larceny under New York Penal Law § 155.25. In November 2011 he pleaded guilty to possession of stolen property in the third degree under New York Penal Law § 165.50 and later was sentenced to a term of imprisonment of one to three years. In March 2015 he pleaded guilty to burglary in the first degree under New York Penal Law § 140.30 and was sentenced to an eight-year term of imprisonment.

In November 2016 the Department of Homeland Security ("DHS") charged Santana as removable under two provisions of the INA. First, DHS charged Santana as removable under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), because Santana had been convicted of two crimes involving moral turpitude arising out of different schemes of criminal misconduct. Second, DHS charged Santana as removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), because his convictions for

3

possession of stolen property and burglary were aggravated felony theft offenses under § 1101(a)(43)(G) and separately because his conviction for burglary was an aggravated felony crime of violence under § 1101(a)(43)(F).

In December 2017 Santana moved to terminate the removal proceedings against him. In support of his motion, Santana argued that, with respect to DHS's charges of removability under § 237(a)(2)(A)(ii), neither petit larceny nor possession of stolen property categorically constituted a crime involving moral turpitude. As for removability under § 237(a)(2)(A)(iii), he contended, neither possession of stolen property nor burglary was an aggravated felony theft offense, and burglary was not a crime of violence.

The IJ rejected Santana's arguments and held that Santana was removable on any of the grounds raised by DHS. On Santana's appeal to the BIA, the Government conceded that under Obeya v. Sessions, 884 F.3d 442 (2d Cir. 2018), petit larceny was not a crime involving moral turpitude. It also acknowledged that Santana's burglary conviction was not an aggravated felony crime of violence in view of Sessions v. Dimaya, 138 S. Ct. 1204 (2018). For reasons that are not apparent on the record, the Government never addressed whether Santana's burglary conviction constituted an aggravated

4

felony theft offense. Instead, it focused exclusively on whether Santana's conviction for criminal possession of stolen property was an aggravated felony under § 1101(a)(43)(G).

The BIA dismissed Santana's appeal after concluding that possession of stolen property in violation of New York Penal Law § 165.50 constituted an aggravated felony under § 1101(a)(43)(G). Having concluded that Santana was removable under § 237(a)(2)(A)(iii), the BIA declined to address the other charges of removability.

This petition followed.

**DISCUSSION**

The central issue on appeal is whether Santana's conviction under New York Penal Law § 165.50 for third-degree possession of stolen property is a removable aggravated felony under 8 U.S.C. § 1101(a)(43)(G). We have "jurisdiction to consider whether a conviction falls within [a] statutory prohibition." Centurion v. Holder, 755 F.3d 115, 118 (2d Cir. 2014). Under the categorical approach, which neither party disputes applies here, we determine if the "state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated

5

felony." Flores v. Holder, 779 F.3d 159, 165 (2d Cir. 2015) (citing Moncrieffe v. Holder, 569 U.S. 184, 190 (2013)). "[O]nly the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant, and the factual aspects of a defendant's situation are immaterial." Dos Santos v. Gonzales, 440 F.3d 81, 84 (2d Cir. 2006) (quotation marks omitted). And where a provision of the INA is ambiguous, we defer to the agency's permissible reasonable interpretation of the provision, see Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984),[1] and we review

---

[1] We have elsewhere more extensively described the "two-step process" outlined in Chevron as follows:

> At Chevron step one, we consider de novo whether Congress has clearly spoken to the question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. We presume that Congress says in a statute what it means and means in a statute what it says. If the statutory language is ambiguous, however, we resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous, to legislative history . . . to see if these interpretive clues clearly reveal Congress's intent.

> If we determine that Congress has not directly addressed the precise question at issue, we proceed to Chevron step two, which instructs us

6

the agency's construction of state law de novo, see Abimbola v. Ashcroft, 378 F.3d 173, 176 (2d Cir. 2004) ("We do not defer . . . to the BIA's interpretation of state criminal laws as the BIA is not charged with the administration of these laws." (quotation marks omitted)).

We start with the statute of conviction in this case. New York Penal Law § 165.50 provides that "[a] person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."

Santana argues that § 165.50 is not an aggravated felony under § 1101(a)(43)(G) for two reasons. First, he says that receipt of stolen property is merely a subset of the federal generic crime of "theft" and therefore requires a lack of consent on the part of the property owner. Because property may be "stolen" under § 165.50 with the owner's consent (for example, by fraudulent means), Santana claims that possession of stolen

---

to defer to an agency's interpretation of the statute, so long as it is reasonable.

Mizrahi v. Gonzales, 492 F.3d 156, 158 (2d Cir. 2007) (cleaned up).

property cannot categorically qualify as an aggravated felony theft under the INA. Second, Santana contends that § 165.50 does not require an intent to deprive, which is an element of an aggravated felony under § 1101(a)(43)(G).

I

Section 1101(a)(43)(G) defines an aggravated felony as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." A generic theft offense requires that the property be stolen "without consent" of the owner. See Almeida v. Holder, 588 F.3d 778, 785 (2d Cir. 2009); see also Matter of Garcia-Madruga, 24 I. & N. Dec. 436, 440 (B.I.A. 2008). A few years ago, in Matter of Alday-Dominguez, a published decision, the BIA differentiated a "theft offense" from an offense involving "receipt of stolen property" and concluded that "the receipt of stolen property . . . is not limited to receipt offenses in which the property was obtained by means of theft." 27 I. & N. Dec. 48, 51 (B.I.A. 2017). The question, then, is what the term "including" in § 1101(a)(43)(G) means. Does it clearly signal that receipt of stolen property is a subset of a theft offense? Does it instead clearly refer to an entirely separate offense? Or

8

is the term ambiguous, so that we should defer to the agency's reasonable interpretation of it under Chevron?

United States v. Flores, 901 F.3d 1150 (9th Cir. 2018), is instructive. There the Ninth Circuit considered whether California's receipt of stolen property offense was categorically an aggravated felony under § 1101(a)(43)(G). Id. at 1154. As with New York Penal Law § 165.50, the property at issue under California law could be stolen with the owner's consent. Id. The defendant argued that § 1101(a)(43)(G)'s use of the term "including" plainly signified that receipt of stolen property was a subset of a theft offense rather than a separate offense. Id. at 1156–57. The Ninth Circuit responded that, to the contrary, "including" could have been used by Congress either to refer to a subset of theft offense or "to add a theft-related crime, receipt of stolen property, into the list of qualifying offenses even though it may not otherwise technically be a generic 'theft offense.'" Id. at 1157. The latter reading, the Ninth Circuit reasoned, was "consistent with the distinct function of the term 'stolen' in 'receipt of stolen property': unlike the adjective 'theft' in 'theft offense,' which indicates the nature of the offender's conduct, 'stolen' describes the nature of the property involved in the offense,

independent of the offender's conduct." Id.  The Ninth Circuit thus concluded that the term "including" in § 1101(a)(43)(G) was ambiguous.  Id. at 1158.

We agree with the Ninth Circuit that the term "including" is ambiguous here for essentially the same reason and that it is not clear whether receipt of stolen property is a subset of a theft offense or a separate offense.  Under Chevron, therefore, "we must defer to the precedential opinions of the BIA interpreting the term so long as the interpretation is based on a permissible construction of the statute."  Id.; see Chevron, 467 U.S. at 843.

II

The BIA's interpretation of the term "including" in the parenthetical "including receipt of stolen property" in § 1101(a)(43)(G) is reasonable.  As the BIA observed, the fact that the parenthetical says "receipt of stolen property" rather than "receipt of property obtained by theft" strongly suggests that Congress did not intend to limit receipt of stolen property to the generic federal definition of theft.  Alday-Dominguez, 27 I. & N. Dec. at 50 (emphasis added); see Flores, 901 F.3d at 1158.  And in a different context the

10

Supreme Court interpreted the term "stolen" expansively to include offenses in which property was obtained with an owner's consent. See Alday-Dominguez, 27 I. & N. Dec. at 50–51 (citing United States v. Turley, 352 U.S. 407, 415–17 (1957)). This again conveys that "the receipt of stolen property parenthetical is not limited to receipt offenses in which the property was obtained by means of theft." Id. at 51.

We defer to the BIA's reasonable construction of the phrase "including receipt of stolen property" as not limited to receipt offenses in which the property was obtained by means of theft. The elements of generic theft, including that the property be taken without consent, differ from the elements of receipt of stolen property, which require only that the offender knowingly possess stolen property, regardless of how it was stolen.

In urging a contrary conclusion, Santana insists that Alday-Dominguez contradicts an earlier BIA determination in an unpublished decision, In re Bazuaye, No. A024 359 599, 2009 WL 773212 (B.I.A. Mar. 9, 2009). In Bazuaye, the BIA concluded that larceny under New York law, an offense commonly thought to be somewhat more serious than possession of stolen property, is not categorically an aggravated felony theft offense under § 1101(a)(43)(G)

11

because it does not have a "without consent" requirement.  Id. at *3–4.  In effect, Santana invites us to favor the BIA's earlier decision in Bazuaye and to extend it to the offense of receipt of stolen property here.

We decline Santana's invitation.  "While the BIA's interpretation of immigration statutes is generally entitled to Chevron deference, interpretations in non-precedential unpublished BIA decisions, as in [Bazuaye], are not so entitled."  Dobrova v. Holder, 607 F.3d 297, 300 (2d Cir. 2010).  Regardless of any conflict between the two BIA decisions, we afford Chevron deference only to the BIA's later reasonable interpretation of § 1101(a)(43)(G) in Alday-Dominguez, a published opinion, unless that interpretation is contrary to the "unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 843; see Mizrahi v. Gonzales, 492 F.3d 156, 158 (2d Cir. 2007).  As we have already concluded, however, the plain language of the statute is ambiguous as to whether "receipt of stolen property" is a subset of theft offenses or a separate theft-related crime.

III

We turn next to Santana's argument that New York Penal Law § 165.50 and 8 U.S.C. § 1101(a)(43)(G) are not a categorical match because

12

§ 1101(a)(43)(G) requires proof that the offender intends to deprive the owner of property, while the New York statute does not. The BIA has interpreted "receipt of stolen property" under § 1101(a)(43)(G) to include the taking of property "whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." In re V-Z-S-, 22 I. & N. Dec. 1338, 1346 (B.I.A. 2000). In Matter of Deang, the BIA explained that an intent to deprive the owner of property is "a necessary element of a receipt of stolen property offense." 27 I. & N. Dec. 57, 59 (B.I.A. 2017). If so, the BIA reasoned, then a statute that permits conviction even if the offender had only "reason to believe" that the property was stolen is not a categorical match with § 1101(a)(43)(G). See id. Actual knowledge that the property was stolen, the agency ruled, is necessary to demonstrate that the offender had the required intent to deprive. Id. at 62–63.

We earlier endorsed this view in Abimbola. There the petitioner argued that larceny under Connecticut law was not a categorical aggravated felony under § 1101(a)(43)(G) because Connecticut defines larceny to include receipt of stolen property, a crime that does not explicitly incorporate an intent to deprive element. See Abimbola, 378 F.3d at 179–80. Under

13

Connecticut law, an individual is guilty of receipt of stolen property if "he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen." Conn. Gen. Stat. § 53a–119(8) (2014). We explained that "[o]ne who possesses stolen property under Connecticut law does so knowing or having reason to know that the property is stolen." Abimbola, 378 F.3d at 180. Therefore, we said, "[i]t would seem self-evident that under Connecticut law, the possession of stolen property . . . plays a role in the continued deprivation of a rightful owner's use of his or her property." Id.

We agree that an intent to deprive the owner of property is inherent in the knowing possession of stolen property under New York law. As we asserted in Abimbola, it was unnecessary for the state legislature to explicitly incorporate an intent to deprive element in Connecticut's receipt of stolen property statute, since an intent to deprive can be inferred from the requirement that the offender knew that the property was stolen. See id. at 179–80; Flores, 901 F.3d at 1160. Similarly, we infer that an offender like Santana who has violated § 165.50 by knowingly possessing stolen property

14

in the third degree has necessarily done so with the intent to deprive the owner of that property.

IV

In sum, we defer to the BIA's reasonable interpretation of the ambiguous term "including" in "including receipt of stolen property" in 8 U.S.C. § 1101(a)(43)(G). Under that interpretation, "'receipt of stolen property' is a distinct aggravated felony independent of theft and the property received need not have been stolen by means of 'theft' as generically defined." Flores, 901 F.3d at 1159. We also determine that an intent to deprive is inherent in the requirement that an offender "knowingly" possesses stolen property. A conviction under New York Penal Law § 165.50 is therefore categorically an aggravated felony under § 1101(a)(43)(G).

**CONCLUSION**

We have considered Santana's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **DENY** the petition for review.

15