RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NIKOLAY STOYANO TANTCHEV,

　　　　　　　　　　　　　　　　*Petitioner*,

　　*v.*

MERRICK B. GARLAND, Attorney General,

　　　　　　　　　　　　　　　　*Respondent*.

No. 21-4067

─────────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 078 866 822.

Argued:  July 27, 2022

Decided and Filed:  August 19, 2022

Before:  GUY, MOORE, and CLAY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:**  Maria Baldini-Potermin, MARIA BALDINI-POTERMIN & ASSOCIATES, P.C., Chicago, Illinois, for Petitioner.  Christina R. Zeidan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Maria Baldini-Potermin, MARIA BALDINI-POTERMIN & ASSOCIATES, P.C., Chicago, Illinois, for Petitioner.  Christina R. Zeidan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

　　CLAY, Circuit Judge.  Nikolay Stoyanov Tantchev petitions for review of a decision of the Board of Immigration Appeals ("BIA") ordering him removed from the United States for having been convicted of an aggravated felony under the Immigration and Nationality Act

("INA"), 8 U.S.C. § 1101(a)(43)(G). For reasons set forth below, we **DENY** the petition for review.

## I. BACKGROUND

### A. Factual Background

Petitioner Nikolay Stoyanov Tantchev is a native and citizen of Bulgaria. He entered the United States on May 1, 1999, with a business visa. He received lawful permanent resident status on April 23, 2012. For many years, Tantchev ran a trucking business out of a warehouse in Chicago. *United States v. Tantchev*, 916 F.3d 645, 648 (7th Cir. 2019). In 2008, Tantchev and one of his employees started operating a side business coordinating the export of shipping containers from Chicago to Mongolia for individual customers. *See id.* Tantchev would have large shipping containers delivered to his warehouse. *Id.* His customers would then come to his warehouse and load the shipping containers themselves. *Id.* at 649. Tantchev never looked inside the containers. *Id.* He would fill out customs paperwork describing the contents of the containers using information provided by the customers. *Id.* In 2011, Customs and Border Protection learned that several of these shipping containers held stolen cars. *Id.* In 2016, a federal grand jury in the Northern District of Illinois indicted Tantchev on several counts related to this activity. *Id.* at 650. Relevant to this appeal, Tantchev was charged with exporting stolen vehicles under 18 U.S.C. § 553. *Id.* at 650, 652. The case went to trial, and the jury convicted Tantchev on all charges. *Id.* at 650.

At trial, the district court instructed the jury on the elements of a § 553 crime stating that they must find, beyond a reasonable doubt, that:

1. The defendant attempted to export the motor vehicle . . . ;
2. The motor vehicle was stolen; and
3. When the defendant attempted to export the stolen motor vehicle, the defendant knew that it was stolen.

(Jury Instr., A.R. #161.) To define knowledge, the district court gave what is known as an "ostrich" instruction, referencing situations where the defendant is willfully blind to material facts. *Tantchev*, 916 F.3d at 652. The judge instructed the jury that knowledge includes "a

strong suspicion that the vehicle in the containers [Tantchev] was exporting . . . were stolen and that he deliberately avoided the truth."  (Jury Instr., A.R. #179.)

The jury convicted Tantchev under § 553, and the district court sentenced him to 40 months of imprisonment.  *Tantchev*, 916 F.3d at 648.  The Seventh Circuit affirmed his conviction on appeal after finding that the district court did not err in giving the ostrich instruction. *Id.* at 652–54.  Tantchev served out this sentence in full.

## B.  Procedural Background

After Tantchev was released from prison, the Department of Homeland Security ("DHS") detained him and placed him in removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). DHS ordered his removal on the grounds that his conviction under 18 U.S.C. § 553 was an aggravated felony as defined in the INA, 8 U.S.C. § 1101(a)(43)(G).  Tantchev denied the removability charge and argued that his § 553 conviction was not an aggravated felony.  In a decision issued on June 14, 2021, an immigration judge ("IJ") concluded that exporting stolen vehicles in violation of § 553 is an aggravated felony under the INA.  The IJ therefore sustained the charge of removability and ordered Tantchev deported to Bulgaria.  Tantchev appealed to the BIA.  In an unpublished order issued by a single Board member, the BIA affirmed the IJ's order and upheld the removal order.

Tantchev timely filed a petition for review with this Court.  He also filed an emergency motion with the Court seeking to stay his deportation pending his appeal.  Another panel of this Court denied that motion on January 5, 2022, and DHS deported Tantchev to Bulgaria on January 6, 2022.[1]

## II.  DISCUSSION

### A.  Standard of Review

"This court has jurisdiction to review a final order of removal from the BIA pursuant to 8 U.S.C. § 1252."  *Marikasi v. Lynch*, 840 F.3d 281, 286 (6th Cir. 2016).  "Where the BIA

---

[1]Tantchev continues to pursue his appeal to the end because, if he prevails, DHS policies may require the agency to facilitate his return.  *See* USICE, *ICE Policy Directive No. 11061.1:  Facilitating the Return to the United States of Certain Lawfully Removed Aliens*, Feb. 24, 2012, available at https://tinryurl.com/2p9cpz9u.

reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). But "to the extent that the BIA adopted the immigration judge's reasoning, this court also reviews the immigration judge's decision." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (citing *Khalili*, 557 F.3d at 435).

"[W]hether [a petitioner's] conviction renders him removable under 8 U.S.C. § 1227(a)(2)(A)(iii) is a non-discretionary, purely legal question" that this Court reviews *de novo*. *Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 6–7 (2004)). "Where appropriate, however, the courts must defer to reasonable BIA interpretations of the statutes they are charged with implementing," *i.e.*, the INA. *Id.* (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). "However, the BIA's ultimate conclusion that a particular . . . conviction amounts to an aggravated felony conviction within the meaning of § 1227(a)(2)(A)(iii) is reviewed *de novo* because such a conclusion depends upon interpreting state statutes and federal statutes unrelated to immigration." *Id.* (citing *Chery v. Ashcroft*, 347 F.3d 404, 407 (2d Cir. 2003)).

**B. Analysis**

Under the INA, an immigrant may be removed from the United States if he is convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines aggravated felony to include "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." *Id.* § 1101(a)(43)(G).

To determine whether a petitioner's conviction is an aggravated felony warranting removal, courts "look[] to the statute . . . of conviction, rather than to the specific facts underlying the crime." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (quoting *Kawashima v. Holder*, 565 U.S. 478, 483 (2012)). This process of comparing statutes is known as the "categorical approach," and it involves three related inquiries. *Keeley v. Whitaker*, 910 F.3d 878, 881 (6th Cir. 2018) (citing *Esquivel-Quintana*, 137 S. Ct. at 1567–68). First, the Court must "identify the minimum conduct required for a conviction" under the criminal statute,

18 U.S.C. § 553(a)(1). *Id.* (citing *Esquivel-Quintana*, 137 S. Ct. at 1568). Second, the Court must identify the elements of a generic receipt of stolen property crime as that term is used in the INA. *See id.* Finally, the Court must "determine if the minimum conduct criminalized by the [predicate] statute 'categorically fits' within the generic crime." *Id.* at 881–82 (quoting *Esquivel-Quintana*, 137 S. Ct. at 1568). Accordingly, a conviction for exporting stolen vehicles qualifies as an aggravated felony only "if the least of the acts criminalized by [18 U.S.C. § 553(a)(1)] falls within the generic [INA] definition" of a receipt of stolen property crime.[2] *Esquivel-Quintana*, 137 S. Ct. at 1568.

Tantchev's only argument on appeal is that the minimum conduct required for conviction under 18 U.S.C. § 553(a)(1) involves a less culpable *mens rea* than a receipt of stolen property crime under the INA. If that is true, then convictions under § 553(a)(1) would not be aggravated felonies warranting removal under the INA. *See Keeley*, 910 F.3d at 881. Tantchev admits that, taken at face value, the *mens rea* elements seem to require the same state of mind. A defendant is criminally culpable under § 553(a)(1) if he exports a vehicle "knowing the [vehicle] to have been stolen." In comparison, a receipt of stolen property crime under the INA requires a *mens rea* of "knowledge or belief" that the property was stolen. *Matter of Daeng*, 27 I. & N. Dec. 57, 63 (B.I.A. 2017). Still, Tantchev argues that knowledge in § 553(a)(1) is broader than in the INA. To fully grasp the parties' arguments, it is necessary to understand how the BIA has interpreted the *mens rea* element of the INA's receipt of stolen property crime in comparison to how federal courts have interpreted the *mens rea* element of a § 553 offense.

The INA does not define "receipt of stolen property." *See* 8 U.S.C. §1101(a)(43)(G). The leading BIA case defining the *mens rea* for a receipt of stolen property crime is *Matter of Daeng*, 27 I. & N. Dec. 57 (B.I.A. 2017). The issue in that case was whether a conviction for

---

[2]18 U.S.C. § 553 contains two subsections involving different types of crimes—one involving stolen vehicles and another concerning vehicle parts that have been tampered with. *See* 18 U.S.C. § 553. "Where a [criminal] statute contains several different crimes that are described separately, we employ what is known as the 'modified categorical approach.'" *Esquivel-Quintana*, 137 S. Ct. at 1568 n.1 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007)). The purpose of the modified categorical approach is to determine the crime of which the defendant was actually convicted. However, in the instant case, the parties agree that the statute is divisible and that Tantchev was convicted under § 553(a)(1) (the stolen vehicle provision). The sole issue before this Court is therefore whether the elements of an offense under § 553(a)(1) categorically fit within the INA's definition of a receipt of stolen property crime.

receipt of a stolen vehicle under a South Dakota statute was an aggravated felony under the INA. *Id.* at 58. The South Dakota law imposed criminal liability "for the possession of any motor vehicle which [a person] knows, or *has reason to believe*, has been stolen." *Id.* (emphasis added). The BIA concluded that the *mens rea* of "reason to believe" was a less culpable state of mind than the INA required. *Id.* at 63. Therefore, the South Dakota crime was not a categorical match with the INA's "receipt of stolen property" crime. *Id.*

In fleshing out the *mens rea* element for receipt of stolen property, the BIA held that the INA requires *both* "knowledge or belief" that the property was stolen *and* "an intent to deprive the owner of his or her property." *Id.* at 59. According to the BIA, these are two separate elements. *Id.* at 59, 63; *see also United States v. Flores*, 901 F.3d 1150, 1160 (9th Cir. 2018) ("BIA decisions define 'receipt of stolen property' as having the following elements: (1) receipt, possession, concealment, or retention of property, (2) knowledge or belief that the property has been stolen, and (3) intent to deprive the owner of his property." (citing *Matter of Daeng*, 27 I. & N. Dec. at 59–63; *Matter of Cardiel-Guerrero*, 25 I. & N. Dec. 12, 16 (B.I.A. 2009); *Matter of Bahta*, 22 I. & N. Dec. 1381, 1384–91 (B.I.A. 2000)).

But these elements significantly overlap. In *Matter of Daeng*, the BIA explained that:

> We cannot infer that a violator who received property with a "reason to believe" that the property was stolen (or a similar mens rea) *intended* to deprive the true owner of the rights and benefits of ownership. This is so because such a violator need not be actually aware of the stolen character of the item received in order to be convicted of the offense. Instead, the prosecution need only establish that he or she *should* have been aware of the fact that such property was stolen when considering the circumstances presented. Accordingly, since a necessary element of both generic theft and receipt of stolen property offenses is an intent to deprive the owner of the rights or benefits of the property taken or received, a receipt of stolen property offense committed with a mens rea of "reason to believe" (or a similar mental state) cannot fall within the generic definition of an aggravated felony receipt of stolen property offense under [§ 1101(a)(43)(G) of the INA].

27 I. & N. Dec. at 59 (citing *United States v. Sanchez-Rodriguez*, 830 F.3d 168, 172–73 (5th Cir. 2016)). As courts have later explained, the "knowledge or belief" element in the INA therefore "refers to a specific defendant's knowledge or belief." *Lewin v. Att'y Gen. of the United States*, 885 F.3d 165, 170 (3d Cir. 2018). The BIA also went out of the way to clarify that its use of the

term "knowledge" encompassed the widely accepted doctrine of "willful blindness." *Matter of Daeng*, 27 I. & N. Dec. at 60 n.5. As to the intent to deprive element, courts have generally agreed that, under *Matter of Daeng*, "[i]ntent to deprive can be inferred from knowledge that the property was stolen." *Flores*, 901 F.3 at 1160 (citing *Matter of Sierra*, 26 I. & N. Dec. 288, 291 (B.I.A. 2014)); *see also Santana v. Barr*, 975 F.3d 195, 201 (2d Cir. 2020) ("[A]n intent to deprive can be inferred from the requirement that the offender knew that the property was stolen." (citing *Abimbola v. Ashcroft*, 378 F.3d 173, 179–80 (2d Cir. 2004))).

That brings us to the elements of 18 U.S.C. § 553(a)(1), exporting stolen motor vehicles. Few courts have opined on the elements of this offense. The ones that have agree that § 553(a)(1)'s knowledge requirement—*i.e.*, "knowing the [vehicle] to have been stolen"—includes willful blindness. *See Tantchev*, 916 F.3d at 652, 653–54; *United States v. Dambelly*, 714 F. App'x 87, 88 (2d Cir. 2018). The willful blindness doctrine has been widely accepted in criminal law for many decades. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). It goes by many names, including "conscious-avoidance," *Dambelly*, 714 F. App'x at 88, and, in this circuit, "deliberate ignorance," *United States v. Mahmud*, 541 F. App'x 630, 633 (6th Cir. 2013) (quoting *United States v. Beaty*, 245 F.3d 617, 621–22 (6th Cir. 2001)). As the Supreme Court has explained:

> Many criminal statutes require proof that a defendant acted knowingly or willfully, and courts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances. . . .
>
> \* \* \*
>
> While the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. We think these requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence.

*Global-Tech Appliances*, 563 U.S. at 766, 769 (footnote omitted). Some circuits, including this Court, have said that willful blindness is as culpable, and therefore interchangeable, with a *mens rea* of knowledge. *See United States v. Matthews*, 31 F.4th 436, 449 (6th Cir. 2022); *see also*

*Global-Tech Appliances*, 563 U.S. at 766 (citing Edwards, The Criminal Degrees of Knowledge, 17 Mod. L. Rev. 294, 302 (1954)).  But the D.C. Circuit has seriously questioned the willful blindness doctrine, finding it more akin to a *mens rea* of recklessness than of knowledge.  *See United States v. Alston-Graves*, 435 F.3d 331, 339–341 (D.C. Cir. 2006); *Global-Tech Appliances*, 563 U.S. at 767–68, 769 n.9 (citing *Alston–Graves*, 435 F.3d at 339–41).

In Tantchev's criminal appeal, the Seventh Circuit held that a defendant can be convicted of exporting stolen cars under § 553(a)(1) under a willful blindness *mens rea*.  *See Tantchev*, 916 F.3d at 652–54.  The Seventh Circuit concluded that the district court did not err in giving a willful blindness instruction—often called an "ostrich instruction"—in Tantchev's case.  *See id.* at 652–54.  As the court explained, an ostrich instruction "is meant 'to inform the jury that a person may not escape criminal liability by pleading ignorance if he *knows or strongly suspects* he is involved in criminal dealings but *deliberately avoids* learning more exact information about the nature or extent of those dealings.'"  *Id.* at 652–53 (quoting *United States v. Green*, 648 F.3d 569, 582 (7th Cir. 2011)) (emphasis added).  As Tantchev admits, the Seventh Circuit's interpretation of the willful blindness doctrine in his case still requires more than negligence or recklessness.

That brings us back to the ultimate issue before this Court:  whether the *mens rea* under § 553(a)(1), which encompasses willful blindness,[3] categorically matches the "knowledge or belief" and "intent to deprive" elements of a receipt of stolen property offense in the INA.  Tantchev says it does not.  He argues that an ostrich instruction allows a jury to convict someone with a *mens rea* that is less culpable than "knowledge or belief," and more akin to "reason to believe."

---

[3]Even though the D.C. Circuit may require *more* than willful blindness to sustain a conviction for an offense that, like § 553(a)(1), requires "knowledge," *see Global-Tech Appliances*, 563 U.S. at 767–68, 769 n.9 (citing *Alston–Graves*, 435 F.3d at 339–341), the categorical approach requires us to compare the elements of an aggravated felony under the INA to the *least culpable* conduct that could sustain a conviction under the criminal statute, *see Keeley*, 910 F.3d at 881–82 (explaining categorical approach requires courts to "determine if the minimum conduct criminalized by the [predicate] statute 'categorically fits' within the generic crime" (quoting *Esquivel-Quintana*, 137 S. Ct. at 1568)).  Even though some courts would not uphold a conviction under § 553(a)(1) based on a willful blindness standard, most would.  Indeed, the Seventh Circuit did exactly that in Tantchev's case.  Accordingly, we must compare a willful blindness *mens rea* to the *mens rea* of a receipt of stolen property crime in the INA, 8 U.S.C. § 1101(a)(43)(G).

But Tantchev faces a significant hurdle with this argument. Although the crime at issue in *Matter of Daeng* did not involve a *mens rea* of willful blindness, the BIA nonetheless weighed in on whether that *mens rea* constitutes knowledge or belief under the INA. *See Matter of Daeng*, 27 I. & N. Dec. at 60 n.5. In a footnote, the BIA explained that:

> Almost all circuits have adopted the concept that "'[k]nowingly' in criminal statutes is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it." . . . Thus, *in contemplating "knowledge," we include the concept of [] "willful blindness."*

*Id.* (quoting *United States v. Jewell*, 532 F.2d 697, 702 (9th Cir. 1976) (en banc)) (emphasis added). Tantchev does not argue that the BIA erred in interpreting knowledge to include willful blindness. Thus, this footnote in *Matter of Daeng* requires the conclusion that a *mens rea* of willful blindness categorically matches the "knowledge or belief" element for an aggravated receipt of stolen property crime. *See Matter of Daeng*, 27 I. & N. Dec. at 60 n.5.

That leaves Tantchev with one argument. He posits that while the BIA may equate "knowledge or belief" with "willful blindness," that "does not explain how such deliberate avoidance would amount to 'intent to deprive,'" which is a separate element. (Pet'r Br. at 11 n.3 (citing *Matter of Daeng*, 27 I. & N. Dec. at 60 n.5).) There is some support for the proposition that certain facts may allow a jury to infer knowledge, but those same facts would not support an inference of intent. *See Dambelly*, 714 F. App'x at 89 (citing *United States v. Samaria*, 239 F.3d 228, 239–40 (2d Cir. 2001)). But it would be unnatural to read the BIA's footnote in *Matter of Daeng*—which plainly intended to bring willful blindness within the purview of the INA's receipt of stolen property crime—as saying that willful blindness is enough to establish "knowledge or belief" while falling short on the "intent to deprive" element. Indeed, we read *Matter of Daeng* as tethering the two elements such that if the "knowledge or belief" element is met, that would support an inference of intent to deprive. *See generally Matter of Daeng*, 27 I. & N. Dec. at 59, 63; *see also Santana*, 975 F.3d at 201 ("[A]n intent to deprive can be inferred from the requirement that the offender knew that the property was stolen." (citing *Abimbola*, 378 F.3d at 179–80)). Therefore, as the government notes, "by equating 'willful blindness' to 'knowledge,' the [BIA] indicated that persons exhibiting willful blindness can be said to possess

an intent to deprive for the same reason as those with actual knowledge or belief that property is stolen." (Gov't Br. at 20.)

Accordingly, the BIA in Tantchev's case did not err in concluding that the *mens rea* of willful blindness encompassed in 18 U.S.C. § 553(a)(1) categorically matches the *mens rea* requirement of a receipt of stolen property crime under 8 U.S.C. § 1101(a)(43)(G).

## III.  CONCLUSION

For these reasons, we **DENY** Tantchev's petition for review.