RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SAM MORRIS,

          *Petitioner*,

    *v.*

TODD W. BLANCHE, Acting U.S. Attorney General,

          *Respondent*.

Nos. 25-3084/3893

———————————

On Petition for Review from the Board of Immigration Appeals.
No. A 078 807 248.

Decided and Filed:  June 25, 2026

Before:  GRIFFIN, LARSEN, and READLER, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:**  Russell Reid Abrutyn, ABRUTYN LAW PLLC, Southfield, Michigan, for Petitioner.  Christopher G. Gieger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————————

## OPINION

———————————

LARSEN, Circuit Judge.  After being convicted of two firearms offenses and an embezzlement charge, lawful permanent resident Sam Morris was placed in removal proceedings.  His counsel conceded removability and applied for cancellation of removal.  The Immigration Judge (IJ) denied cancellation and ordered Morris removed.  The Board of Immigration Appeals (BIA or Board) summarily affirmed, and Morris petitioned for review.  Soon afterwards, Morris moved to reconsider and reopen the case, alleging ineffective assistance

of his prior counsel and arguing that his offense was not a removable firearms offense under 8 U.S.C. § 1227(a)(2)(C).  The government also moved to reopen and dismiss.  The Board denied both motions.  Morris now petitions for review of those decisions as well.  Because Morris's arguments under his first petition are unexhausted or jurisdictionally barred, we DISMISS that petition.  And because Morris failed to comply with the procedural requirements for making an ineffective assistance claim, we DENY his second petition on that point.  Finally, because the Board did not abuse its discretion in denying the government's unsupported motion to reopen and dismiss, we DENY the remainder of his second petition.

I.

Sam Morris fled civil war in Liberia to come to the United States in 2001.  After initially being admitted as a refugee, he was adjusted to lawful permanent resident status in 2016.  Since then, he has been twice convicted of possessing a loaded firearm in a vehicle under Michigan law—once in 2018 and once in 2023.  The second of those convictions stemmed from an incident in which Morris perceived that he was being shot at in public and fired his gun in response.  Morris was arrested with two handguns and six magazines, one of which was an extended 40-round pistol magazine.  Morris was again convicted in 2024 of embezzlement after stealing around $1,500 from his employer.[1]

A few weeks after this most recent conviction, the Department of Homeland Security (DHS) placed Morris in removal proceedings.  The Notice to Appear charged that he was deportable under 8 U.S.C. § 1227(a)(2)(C) because he had been convicted of possessing a firearm as defined in 18 U.S.C. § 921(a).  At the removal proceeding, his lawyer admitted the factual allegations on Morris's behalf and conceded that Morris was removable—the lawyer asserted that he had "d[one] the research on this" and had concluded that the conviction was "categorically a firearm offense."  Admin. R. at 198.  Morris then applied for cancellation of removal under 8 U.S.C. § 1229b(a).  After a hearing on the merits in which only the discretionary prong of cancellation of removal was disputed, the IJ denied the application.

---

[1]Morris also has additional, less relevant convictions:  soliciting a prostitute in 2008 and four convictions for driving without a valid license between 2013 and 2018.

Morris appealed, arguing that, on balance, the IJ's discretionary determination should have come out the other way.  The Board affirmed and adopted the IJ's opinion in full.

After this loss, Morris found new counsel.  The new lawyer opined that Morris was likely not subject to removal under § 1227(a)(2)(C) because the Michigan statute under which he was convicted, Mich. Comp. Laws § 750.227c, criminalized conduct that does not constitute "possessi[on]" of "a firearm" within the meaning of federal law, 8 U.S.C. § 1227(a)(2)(C).  *See also* 18 U.S.C. § 921(a)(3) (excluding antique firearms); *Pugin v. Garland*, 599 U.S. 600, 603–04 (2023) (employing the categorical approach to analyze removability under § 1227(a)(2)).  Morris then filed a motion to reconsider and reopen his removal proceedings, arguing that his prior counsel had rendered ineffective assistance.  Morris attached an affidavit detailing his allegation, a letter to his former counsel, and a complaint form to be filed with the Michigan Grievance Commission.  DHS likewise moved to reopen, seeking to dismiss the removal proceedings without prejudice.  In support of its motion, the government said little more than that it had "determined that circumstances . . . have changed to such an extent that it is in the parties' best interests" to reopen and dismiss, but it noted that it might reinstitute removal proceedings in the future.  Admin. R. at 9.

The Board denied both motions.  On Morris's motion, the Board denied reconsideration because Morris had "not identified any material error of fact or law in [its] prior decision." Admin. R. at 4.  And it would not reopen the case because it concluded that Morris had failed to comply with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637, 639–40 (B.I.A. 1988), *aff'd* 857 F.2d 10 (1st Cir. 1988).  *Lozada*, and the cases that followed it, required Morris to file an affidavit describing the ineffective assistance complained of, inform his attorney of this grievance, and file a complaint with the appropriate disciplinary body.  *See Kada v. Barr*, 946 F.3d 960, 964–65 (6th Cir. 2020) (discussing *Lozada*).  Though Morris provided copies of a letter and completed complaint form, the Board concluded that "there is no evidence that these letters were actually mailed." Admin. R. at 4.

On the government's motion, the Board concluded that reopening was discretionary rather than mandatory under the applicable statutes and regulations.  It faulted the government for failing to explain what circumstances had changed or what new rationale supported dismissal.

And it saw such explanation "as essential here because the respondent's extensive criminal history both before and after he was granted lawful permanent resident status indicates that he is a danger to the public and demonstrates that he has a blatant and continued disregard of the laws of the state of Michigan." Admin. R. at 5.

Morris timely petitioned for review of both Board decisions—the initial affirmance of the IJ's denial of cancellation of removal and the later denial of the dual motions to reconsider and reopen or dismiss. While the first petition was before this court and the dual motions were still before the Board, a panel of this court granted Morris's motion for a stay of removal. *See Morris v. Bondi*, 2025 U.S. App. LEXIS 7774 (6th Cir. Apr. 2, 2025) (order).

II.

The government argues that no justiciable controversy is before this court. We agree as to some claims, but not others.

The Immigration and Nationality Act (INA) grants us jurisdiction to review a "final order of removal" entered or affirmed by the Board. 8 U.S.C. § 1252(a)(1); *Mohammed v. Bondi*, 129 F.4th 988, 989–90 (6th Cir. 2025). When the Board issues its own opinion, "we review the BIA's decision as the final agency determination." *Tantchev v. Garland*, 46 F.4th 431, 434 (6th Cir. 2022) (citation omitted). And when the Board affirms an immigration judge's decision without separate opinion, we review that decision as the agency's. *See id.*; 8 C.F.R. § 1003.1(e)(4).

That power to review final orders is encircled by a host of limitations. Three are relevant here. First, "no court shall have jurisdiction to review" "[d]enials of discretionary relief" such as "any judgment regarding the granting of relief under section . . . 1229b," i.e., an application for cancellation of removal. 8 U.S.C. § 1252(a)(2)(B). Second, "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered" by, among others, § 1227(a)(2)(C) "of this title." *Id.* § 1252(a)(2)(C).[2] But neither of those limitations "shall be construed as precluding review of

___

[2]Note that two subsection -(a)(2)(C)'s are at work. The first, § 1227(a)(2)(C), provides that aliens convicted of certain firearm offenses are deportable. The second, § 1252(a)(2)(C), defines the scope of judicial

constitutional claims or questions of law raised upon a petition for review." *Id.* § 1252(a)(2)(D). Finally, "[a] court may review a final order of removal only if" "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Although this final requirement is not jurisdictional, *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–23 (2023), it is "mandatory in the sense that a court must enforce the rule if a party properly raises it," *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024) (citation omitted).

A.

Morris's first petition seeks review of the Board's order affirming the IJ's order which found him removable and denied his motion for cancellation of removal.

*1. Removability.* To the extent that Morris targets the finding of removability in his first petition, we cannot consider that challenge because it is not exhausted. We have "interpreted th[e] exhaustion requirement to require precision—it is stricter than merely requiring an alien to exhaust all avenues of appeal; it further requires the alien to preserve *each claim* by presenting it to the BIA." *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020) (citation modified), *abrogated on other grounds*, *Santos-Zacaria*, 598 U.S. at 416; *accord Gamas-Vicente v. Blanche*, 172 F.4th 484, 491 (6th Cir. 2026); *see also Santos-Zacaria*, 598 U.S. at 415 (considering exhaustion with respect to a specific "challenge"). Morris did not challenge his removability before either the IJ or the Board, and the government has invoked the exhaustion rule before our court. So, we are without power to consider this argument.

Morris tries three responses. First, he argues that an immigration judge and the Board hold independent duties to determine a noncitizen's removability even when that party concedes removability. Even if this were true, however, the Board's failure to perform its duty would not invest us with powers of review beyond those granted in the INA. Our review remains limited to the specific claims Morris raised before the Board.

Second, Morris argues that because federal courts always retain jurisdiction to determine their jurisdiction, *see United States v. Ruiz*, 536 U.S. 622, 628 (2002), and because

---

review of final orders of removal against aliens who are deportable by reason of certain criminal offenses defined in six other sections of the INA—among them, § 1227(a)(2)(C).

§ 1252(a)(2)(C) limits our jurisdiction over this final order only if he "is removable by reason of having committed" one of the covered firearm offenses in § 1227(a)(2)(C), we are duty bound to answer *that* question ourselves.   It's a clever argument.   But, again, § 1252(a)(2)(C)'s jurisdictional limit does not bar review of "questions of law."   *Id.* § 1252(a)(2)(D).   Whether "a petitioner's conviction renders him removable under [a covered section in § 1227(a)(2)] is a non-discretionary, purely legal question."   *See Tantchev*, 46 F.4th at 434 (citation modified) (coming to an identical conclusion with respect to § 1227(a)(2)(A)(iii), a provision parallel to -(a)(2)(C) in both §§ 1227 and 1252); *accord Mohammed*, 129 F.4th at 990.   It follows, then, that the question of Morris's removability under § 1227(a)(2)(C) is unaffected by § 1252(a)(2)(C)'s jurisdictional bar and properly before us, whatever its answer.   And the fact that we have subject-matter jurisdiction to decide the question does not grant a reprieve from § 1252(d)'s exhaustion requirement.

Finally, Morris argues in his reply brief that he *did* raise his removability argument below and thus exhaust his remedies by raising the issue in his motion to reopen.   But the record reflects otherwise.   Morris's first petition requested review of only "the January 13, 2025, Order of the Board."   R. 1, Pet., No. 25-3084.   Indeed, that first petition was filed four days before his motion to reconsider and reopen.   Given the INA's directive that we "decide [a] petition only on the administrative record on which the order of removal [was] based," 8 U.S.C. § 1252(b)(4)(A), it is hard to see how our review of Morris's first petition could encompass his motion.   Consider also the Supreme Court's conclusion that a motion to reopen or reconsider is not necessary to exhaust a petitioner's claims.   *Santos-Zacaria*, 598 U.S. at 424.   Because "reconsideration and reopening are discretionary," *id.* at 425, they are not an "administrative remed[y] available to the alien *as of right*" that must be exhausted before "review [of] a final order," 8 U.S.C. § 1252(d)(1) (emphasis added).   By the same token, Morris's decision to avail himself of these discretionary avenues to relief has no bearing on whether he exhausted the remedies available to him as of right.   Because Morris did not exhaust his removability argument below, we cannot consider it in his first petition.

*2. Cancellation of Removal.*   Morris also argues that the Board erred in affirming the IJ's denial of his motion for cancellation of removal.   First, he argues that the Board decided the case

on an incomplete transcript, undermining the Board's review. Second, he argues that the IJ failed to reasonably weigh his criminal history or to compare his circumstances to other cancellation of removal cases where the criminal history was more severe. Finally, he argues that the IJ erred by relying on uncharged conduct, or dismissed or reduced charges.

As noted before, we lack jurisdiction to review discretionary decisions "regarding the granting of relief" on an application for cancellation of removal. *Id.* § 1252(a)(2)(B). But we retain jurisdiction over "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D). When a petition raises a "mixed question[] of law or fact," like the Board's application of a legal standard to the facts, that challenge is also "reviewable as [a] question[] of law under § 1252(a)(2)(D)." *Wilkinson v. Garland*, 601 U.S. 209, 218–19 (2024).

Deciding an application for cancellation of removal involves two steps. First, an immigration judge must determine whether the noncitizen satisfies the eligibility criteria set out in 8 U.S.C. § 1229b. *Id.* at 212. Second, the immigration judge "decides whether to exercise his discretion favorably and grant the noncitizen relief in the particular case." *Id.* at 212–13. Here, the parties agreed that Morris, a lawful permanent resident, satisfied the eligibility criteria. So, the only contested issue before the IJ concerned the "discretion [of] the court." Admin. R. at 178.

Nearly all the cases applying the dueling jurisdictional provisions in § 1252(a)(2) to § 1229b have involved cancellation of removal for nonpermanent residents. *See, e.g.*, *Wilkinson*, 601 U.S. at 213; *Galvez-Bravo v. Garland*, 119 F.4th 1038, 1039 (6th Cir. 2024); *Hernandez v. Garland*, 59 F.4th 762, 763 (6th Cir. 2023). Those eligibility criteria include more thorny questions, like whether the noncitizen is "a person of good moral character" or whether his removal would cause "exceptional and extremely unusual hardship" to a citizen spouse, parent, or child. 8 U.S.C. §§ 1229b(b)(1)(B), -(b)(1)(D). And though answering these questions involves the "weigh[ing]" of "positive and negative traits," *Hernandez*, 59 F.4th at 768, or a "choice . . . by the agency," we have held that challenges to an agency's "reasoned decisionmaking" on these criteria are legal questions reviewable under § 1252(a)(2)(D), *Galvez-Bravo*, 119 F.4th at 1040 (citation modified); *see also Hernandez*, 59 F.4th at 768–69. Similarly, a challenge to an immigration judge's "consideration" of a putatively "improper[]" criterion is a

"purely legal question." *Hernandez*, 59 F.4th at 767–68 (discussing *Ikenokwalu-White v. INS*, 316 F.3d 798, 804 (8th Cir. 2003)).

In one sense, Morris's challenges to the Immigration Judge's decision resemble these challenges to "reasoned decisionmaking" over which we have claimed jurisdiction. But Morris's arguments target "the Board's ultimate discretionary choice to deny relief," *id.* at 763, "even if the immigrant meets all . . . eligibility factors," *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021). And we have noted the link between the "discretion-empowering language" that § 1229b uses to describe the "*ultimate* authority to deny cancellation of removal" and the use of "discretion" in § 1252(a)(2)(B)'s jurisdictional bar. *Hernandez*, 59 F.4th at 769. It is because that discretionary language is lacking from the eligibility requirements that challenges to the government's choices there are cognizable legal questions. *Id.* Consequently, we conclude that Morris's challenges to the IJ's, and the Board's, ultimate decision to deny cancellation of removal are barred by § 1252(a)(2)(B). Accordingly, we must deny his first petition for review in its entirety.

B.

Morris's second petition seeks review of the Board's order denying his motion to reconsider and reopen. The Board's denial of such a motion is a "separate final order[]" which we have putative jurisdiction to review under § 1252(a)(1). *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995), *overruled on other grounds by Riley v. Bondi*, 606 U.S. 259, 276 (2025); *accord Yeremin v. Holder*, 738 F.3d 708, 713 (6th Cir. 2013). And the familiar jurisdictional and exhaustion bars from § 1252(a)(2) apply.

*1. Standard of Review and Jurisdiction.* In the INA context, a motion to reconsider argues that "errors of law or fact" infect "the previous order." 8 U.S.C. § 1229a(c)(6)(C). A motion to reopen argues that "new facts" justify relief from the previous order. *Id.* § 1229a(c)(7)(B). Generally, we review the Board's denial of either one for an abuse of discretion. *Kada*, 946 F.3d at 963; *Yeremin*, 738 F.3d at 718. The Board abuses its discretion when it "acts arbitrarily, irrationally[,] or contrary to law," *Sanchez v. Holder*, 627 F.3d 226, 230 (6th Cir. 2010) (alteration in original) (citation omitted)—for instance, by denying a motion to

reopen or reconsider "without a rational explanation, inexplicably depart[ing] from established policies, or rest[ing] on an impermissible basis such as invidious discrimination against a particular race or group." *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (citation omitted).

Generally, petitioners are "bound by the concessions of their attorneys to the [Immigration Judge] unless they can show ineffective assistance of counsel." *Hanna v. Holder*, 740 F.3d 379, 387 (6th Cir. 2014) (citation omitted).[3]  When a motion to reopen or reconsider is based on an allegation of ineffective assistance, the petitioner must make two showings.[4]  First, the petition must comply with the *Lozada* procedure:  the motion must be accompanied by "an affidavit detailing counsel's failings, proof that counsel was informed of the allegations, and evidence that the petitioner filed disciplinary charges with the appropriate authorities." *Kada*, 946 F.3d at 964–65.  Second, the petitioner must show that he was prejudiced by the alleged ineffective assistance. *Id.* at 965.  There must be "a reasonable probability that, but for his counsel's ineffective assistance, [the petitioner] would have been entitled to remain in the United States." *Id.*

Here, the Board reached only the procedural requirements of *Lozada*.  It concluded that there was "no evidence that [the] letters" Morris had attached to his complaint as proof of *Lozada* compliance had been "actually mailed to former counsel and the Michigan [Attorney] Grievance Commission." Admin. R. at 4.  Morris does not directly contest any administrative findings of "historical facts." *Hernandez*, 59 F.4th at 763; *see* Petitioner Br. at 40–42.  Instead, the parties dispute whether the photocopies attached to the motion to reconsider and reopen suffice as the "proof" or "evidence" of "fil[ing]" required by *Lozada*. *See* Petitioner Br. at 40–

---

[3]Morris also makes a passing argument that *Hanna*'s alternative "other egregious circumstances" exception applies. *See id.* (citation omitted).  But, as the government notes, Morris failed to raise this argument below so it is not exhausted.  As before, § 1252(d)(1)'s "exhaustion requirement is a claim-processing rule that [we] must enforce when a party properly raises it." *Herrera v. Bondi*, 162 F.4th 617, 621 (6th Cir. 2025) (citation modified).

[4]Generally, noncitizens have raised ineffective assistance claims under motions to reopen. *See, e.g.*, *Lozada*, 19 I. & N. Dec. at 637 (describing the standard for a "motion to reopen or reconsider based" on ineffective assistance but analyzing the case as a motion to reopen); *Sako*, 434 F.3d at 859 (discussing a motion to reopen); *Reda v. Mukasey*, 294 F. App'x 182, 182 (6th Cir. 2008) (same).  In its decision here, the Board discussed *Lozada* compliance only in denying Morris's motion to reopen. Admin. R. at 2.  Morris's second petition has focused on that application of *Lozada*, not the Board's cursory denial of Morris's motion to reconsider.  Indeed, ineffective assistance is the only mechanism Morris relies on to free himself from his former counsel's removability concession.  So we too will focus on Morris's motion to reopen.

42; Respondent Br. at 36–39. So the parties' disagreement centers on whether the filing "meet[s] the governing legal test"—a "mixed question of law and fact." *Hernandez*, 59 F.4th at 763 (citation modified). We have jurisdiction to review such a question. *Wilkinson*, 601 U.S. at 218–19 (considering the § 1252(a)(2)(B) bar); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227–28 (2020) (considering the § 1252(a)(2)(C) bar). And we review for an abuse of discretion.

*2.* Lozada *compliance.* Attached to Morris's motion to reconsider and reopen were an affidavit alleging ineffective assistance, a letter to his former counsel, and a complaint addressed to the Michigan Attorney Grievance Commission. The complaint form and Morris's declaration appear to have been printed, completed, and signed on February 4, 2025, at the Chippewa County Jail where Morris was then incarcerated. They are accompanied by a photocopy of a letter addressed to the Grievance Commission from Morris's current counsel, dated February 5, 2025. Finally, Morris included a photocopy of another letter, to Morris's former counsel, also dated February 5. Though the attached declaration described Morris's past representation, Morris did not attest that he had filed a disciplinary complaint or that former counsel had been notified. The motion to reconsider and reopen did assert that "Mr. Morris has complied with the requirements" of *Lozada*, including having "filed a bar complaint" and "notified prior counsel." Admin. R. at 56. "As of the date of . . . filing," Morris had not received a response from either. *Id.*

The Board deemed these attachments insufficient to show *Lozada* compliance. That determination was not an abuse of discretion.

We have described *Lozada* as requiring "proof that counsel was informed of the allegations" and "evidence that the petitioner filed disciplinary charges," *Kada*, 946 F.3d at 965, or a "show[ing] that [such charges] ha[d] been filed," *Sako*, 434 F.3d at 863. "[I]nformed" and "filed" are not past participles by accident. Our cases hold that an affidavit attesting "that a grievance *will be* filed, without more, does not satisfy *Lozada*'s requirement that a complaint be filed *before* the affidavit is submitted to the BIA." *Hamid v. Ashcroft*, 336 F.3d 465, 469 (6th Cir. 2003). It's the actual filing, not the drafting, of the bar complaint that matters. The history of the rule makes this clear. A prior Attorney General Opinion had altered *Lozada*'s strictures so that an alien need only attach but "need not actually file the complaint," leaving it to the Board to

file the complaint should the ineffective assistance argument succeed. *See Matter of Compean*, 24 I. & N. Dec. 710, 736–38 (U.S. Att'y Gen. 2009) (Mukasey). But a later Attorney General reversed that decision. *Matter of Compean,* 25 I. & N. Dec. 1, 1–3 (U.S. Att'y Gen. 2009) (Holder). The same actuality requirement holds for notice to former counsel. We expect that former counsel be "informed of the allegations" so that they have "an opportunity to respond." *Lozada*, 19 I. & N. Dec. at 639. Merely drafting a letter does not provide that opportunity or allow the Board or a court the benefit of former counsel's possible input.

What's more, "proof," "evidence," and "show[ing]" are no makeweights in our *Lozada* jurisprudence. Photocopies of postal labels or tracking documents suffice when they provide enough information to confirm that the notice or grievance went to the right person. In *Eugenio-Reyes v. Barr*, for instance, we concluded that complaints had been filed with the appropriate disciplinary bodies. 795 F. App'x 959, 962 (6th Cir. 2020) (per curiam). In that case, the motion to remand had included a photocopy of a postal label made out to the Puerto Rican disciplinary body and a screenshot of the United States Postal Service's tracking tool showing a parcel with a matching tracking number had been delivered. Admin. R. at 31, 33, in *Eugenio-Reyes*, 795 F. App'x 959 (No. 19-3560). But no letter to the petitioner's former attorneys was provided, much less postal documentation. *Id.* So the court was left without "confirmation that [former counsel] knew about [petitioner's] complaints." *Eugenio-Reyes*, 795 F. App'x at 962.

Accordingly, the Board did not abuse its discretion in concluding that Morris's motion to reopen failed to comply with *Lozada*'s procedural prong. Morris provided no postal documentation demonstrating that the photocopied letters and grievance forms had been sent to the addressees. Nor did his affidavit attest to doing so. And while his motion asserted that these documents had been appropriately sent, it "is well-established that [an attorney's] arguments are not evidence." *Ceasor v. Ocwieja*, 655 F. App'x 263, 283 (6th Cir. 2016). The Board recognized as much. *See* Admin. R. at 4 n.2 (citing *Matter of Ramirez-Sanchez*, 17 I. & N. Dec. 503, 506 (B.I.A. 1980) (noting that "[c]ounsel's arguments are not evidence")). We cannot say that the Board's denial was "without a rational explanation" or involved an "inexplicabl[e] depart[ure] from established policies." *Sako*, 434 F.3d at 863 (citation omitted); *see also Irias v. Bondi*, 167 F.4th 1003, 1006–07 (8th Cir. 2026) (upholding BIA's decision to dismiss an

ineffective assistance claim as "procedurally deficient" under *Lozada* where "counsel only submitted a copy of an email with the substance of his self-report" without "any proof that he sent this email to the relevant authorities").

"An alien who fails to comply with *Lozada*'s requirements forfeits [his] ineffective-assistance-of-counsel claim." *Pepaj v. Mukasey*, 509 F.3d 725, 727 (6th Cir. 2007). So we deny the second petition to the extent it seeks review of the Board's denial of Morris's motion to reconsider and reopen.

C.

Finally, Morris's second petition also seeks review of the Board's denial of the government's motion to reopen and dismiss. We conclude that we have jurisdiction over this claim, but it fails on the merits.

*1. Jurisdiction.* The government hints at "standing questions" surrounding Morris's ability to challenge the Board's denial of the government's motion to reopen and dismiss, but it offers no argument on this point. Respondent Br. at 45. Still, whether a party has Article III standing goes to our subject-matter jurisdiction. So we are duty bound to address it.

When the party seeking review of an agency action "is 'an object of the action . . . at issue . . . there is ordinarily little question that'" Article III standing is present. *Consumers' Rsch. v. FCC*, 67 F.4th 773, 783 (6th Cir. 2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Morris is obviously affected by, and has a stake in, the "final order of [his] removal" from this country. 8 U.S.C. § 1252(a)(1). Had the BIA granted DHS's motion to reopen, Morris would not be under such an order; and were we to say that the BIA abused its discretion in denying the motion, Morris would obtain relief. So the three constitutional prerequisites for standing are present—injury in fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. There is little doubt that Morris has Article III standing to petition for our review.

The government may instead mean to argue that Morris lacks so-called "prudential standing" to contest the Board's denial, "given that he is apparently arguing on behalf of DHS's

interests."  Response Br. at 45.  But "prudential standing" inquiries, such as the ban on asserting the rights of third parties, do not go to our jurisdiction.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 128 n.4 (2014).  Instead, they are merits inquiries, which ask whether Congress has created a cause of action allowing this litigant to raise this claim.  *Id.* And we need not answer this unbriefed merits question when another suffices to resolve the case.

*2. Merits*.  Morris argues that the Board's denial was inconsistent with the DHS's prosecutorial discretion and with the Board's regulations.  It is true that an "agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). And courts have frequently said that "[t]he authority to exercise prosecutorial discretion in immigration cases lies solely with DHS as the federal agency responsible for the administration and enforcement of the immigration laws."  *Patel v. Attorney Gen.*, 523 F. App'x 121, 124 (3d Cir. 2013); *accord Hussaini v. Lynch*, 644 F. App'x 403, 409 (6th Cir. 2016); *Patel v. Holder*, 747 F.3d 493, 497 (7th Cir. 2014).

But we are also careful to note that executive authority in the immigration sphere is divided between the Secretary of Homeland Security and the Attorney General, among others, who are all ultimately responsible to the President.  *See* 8 U.S.C. § 1103(a)(1).  When the Board sits "[a]s [an] adjudicator in immigration cases, the Board exercises authority delegated by the Attorney General," *Kucana v. Holder*, 558 U.S. 233, 239 (2010), including the power to "establish . . . regulations" and "review . . . administrative determinations in immigration proceedings," 8 U.S.C. § 1103(g)(2).

A government motion to reopen, unlike an alien's, is not provided for by statute.  *See* 8 U.S.C. § 1229a(c)(7).  Instead, the Board's regulations allow it "at any time" to "reopen or reconsider on its own motion any case in which it has rendered a decision."  8 C.F.R. § 1003.2(a).  Those regulations also permit DHS to "request . . . to reopen or reconsider a case." *Id.*  But the decision "to grant or deny" such a motion "is within the discretion of the Board, subject to the restrictions" in that regulation.  *Id.*  And the Board may "deny a motion to reopen even if the moving party has made out a prima facie case for relief."  *Id.*

Board regulations also allow "government counsel" to move to dismiss a case, 8 C.F.R. § 1239.2(c), where she concludes that the noncitizen "is not deportable or inadmissible" or where "[c]ircumstances . . . have changed," among other grounds, *id.* § 239.2(a), (c). The Board, or IJ, is left with the "authority to resolve" that motion. *Id.* § 1239.2(b). That authority is described in discretionary terms: the Board "may enter an order of dismissal . . . where DHS [so] moves." *Id.*; *see Singh*, 984 F.3d at 1151 ("As the Supreme Court has observed, '[t]he word "may" clearly connotes discretion.'" (alteration in original) (citation omitted)).**[5]**

Finally, the Board has authority to decide a party's motion to terminate a case. 8 C.F.R. § 1003.1(m). Motions to terminate are motions to dismiss "for a reason other than" the grounds listed in § 239.2(a). *Id.* § 1239.2(b); *see also id.* § 1003.1(m). Some grounds for termination, like the respondent having since become a citizen, are mandatory. *See id.* § 1003.1(m)(1)(i)(C). Others, like deferred action, are discretionary. *See id.* § 1003.1(m)(1)(ii)(C). Joint motions to terminate fall somewhere in between. When both parties move to terminate, or one party does and the other indicates that it does not oppose the motion, termination is mandatory "unless the Board articulates unusual, clearly identified, and supported reasons for denying the motion." *Id.* § 1003.1(m)(1)(i)(G).

Here, the government "move[d] to reopen and dismiss." Admin. R. at 9. It indicated that its motion to dismiss was grounded in its conclusion that "the facts and circumstances of this case . . . have changed" such that it was in the best interest of the government to dismiss the case. *Id.* (citing 8 C.F.R. § 239.2(a)(7)). But it provided no further explanation. The Board found that absence dispositive. A regulatory motion to reopen by the DHS, like a statutory motion to reopen by an alien, must "state . . . new facts" that are material and were not previously available. 8 C.F.R. § 1003.2(c)(1). DHS simply did not provide any new evidence in its motion to reopen. *See* Admin. R. at 9. Nor was reopening available as of right. *Id.*; *see* 8 C.F.R. § 1003.2(a).

---

**[5]**We have jurisdiction to review this decision by the Board. The INA prohibits our review of "decision[s] or action[s] . . . specified *under this subchapter* to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added); *see Kucana*, 558 U.S. at 237. Because regulation, rather than "the statute itself[,]" specifies the discretionary character of the Attorney General's authority" over these motions, § 1252(a)(2)(B) does not affect our jurisdiction here. *Id.* at 244.

As to the motion to dismiss, the Board noted that DHS had failed to explain what circumstances had changed.  Admin. R. at 5.  And the Board found such an explanation particularly necessary where Morris's "extensive criminal history both before and after he was granted lawful permanent resident status indicates that he is a danger to the public" and testifies to his "blatant and continued disregard of the laws of the state of Michigan." *Id.*  The Board's decision on this motion, too, was discretionary.  *See* 8 C.F.R. § 1239.2(b) (noting that the "Board . . . *may* enter" (emphasis added)).  Morris points to § 1003.1(m)(1)(i)(G) and argues that the Board was required to grant DHS's unopposed motion to dismiss.  But he misreads the regulation.  That provision applies only to motions to *terminate*.  The Board's motion to *dismiss* under §§ 1239.2(c), 239.2(a)(7) is explicitly exempted from the reach of § 1003.1(m).  So § 1003.1(m)(1)(i)(G) offers Morris no harbor.

Altogether, we struggle to see how the Board acted "arbitrarily" or "contrary to law," *Sanchez*, 627 F.3d at 230 (citation omitted), or how its decision was an "inexplicabl[e] depart[ure] from established policies," *Sako*, 434 F.3d at 863 (citation omitted).  And because the Board reasonably "review[ed] [this] administrative determination[]" under its "establish[ed] . . . regulations," 8 U.S.C. § 1103(g)(2), it acted as an "adjudicator" within the authority delegated to the Attorney General and then to the Board, *Kucana*, 558 U.S. at 239.

The Board decisions Morris cites do not convince us otherwise.  Rather, they confirm our view that DHS's unreviewable discretion to institute proceedings does not guarantee it a unilateral authority to dismiss proceedings once begun or dissolve final orders once won.

Certainly, the Board "lack[s] the authority to review the DHS's decision to institute proceedings" or "exercise . . . prosecutorial discretion."  *In re W-Y-U-*, 27 I. & N. Dec. 17, 19 (B.I.A. 2017), *overruled on other grounds by In re Castro-Tum*, 27 I. & N. Dec. 271 (U.S. Att'y Gen. 2018); *accord In re Ibarra-Vega*, 29 I. & N. Dec. 476, 482 (B.I.A. 2026).  Accordingly, the Board's regulations afford DHS authority to "unilaterally cancel a notice to appear before jurisdiction vests with an Immigration Judge." *In re Jaso and Ayala*, 27 I. & N. Dec. 557, 558 (B.I.A. 2019) (citing 8 C.F.R. §§ 239.2(a), 1239.2(a)).  But "once jurisdiction vests," DHS "merely has the privilege to move for dismissal," and then "only for certain specified reasons." *Id.* (citation modified).  That motion is not owed an "automatic grant," "but an informed

adjudication by the Immigration Judge or this Board based on an evaluation of the factors underlying the . . . motion." *Id.* (citation omitted). The fact that the Board takes the parties' agreement into account in the exercise of its discretion and choses to go along "in most instances," *In re Yewondwosen*, 21 I. & N. Dec. 1025, 1026 (B.I.A. 1997), does not prevent it from doing otherwise when its "informed adjudication" demands, *Jaso and Ayala*, 27 I. & N. Dec. at 558.

\* \* \*

For the reasons given above, we DISMISS Morris's first petition for review and DENY his second.